Parish, Adm'r, etc. vs. The Town of Eden.

PARISH, Administrator, etc. vs. THE TOWN OF EDEN.

*January 17 — February 3, 1885.*

PLEADING. *(1) Appointment as administrator.*
LIMITATION. *(2) When action commenced: Presentment of claim.*
HIGHWAYS: NEGLIGENCE: DEATH. *(3) Notice of defect: Duty of overseer. (4) Parent and child: Negligence: Court and jury. (5, 6) Instructions to jury. (7) Care in driving. (8) Notice of injury, by whom given in case of death.*

1. A complaint averred that the plaintiff sued as administrator and that he was duly appointed by the *county judge.* The answer did not specifically deny these averments, but by a demurrer *ore tenus* it was objected that the complaint did not show a proper appointment because the *county court* only had jurisdiction in that behalf. *Held,* that it was sufficiently shown that the plaintiff sued in a representative capacity, and on the trial he might prove that he had been duly appointed.

2. If the town board of audit is not in session the filing of a claim with the town clerk to be presented to such board, is the "presentment" of the claim to the board, within the meaning of sec. 4242, R. S., providing that "the presentment of any claim  .  .  .

Parish, Adm'r, etc. vs. The Town of Eden.

shall be deemed the commencement of an action within the meaning of any law limiting the time for the commencement of an action thereon."

3. When an overseer of highways has actual notice of a defect, it is his duty to see that it is remedied, and nothing short of this will relieve the town from liability for injuries to travelers caused by such defect.

4. Upon the evidence in this case (showing among other things that a boy between eleven and twelve years old was driving a team with a load of zinc ore, along country roads from his home to the city twenty miles distant, in the night-time, accompanied by his brother (plaintiff's intestate) two years younger, and that both boys were killed by the overturning of the wagon at a point where the highway was defective) the questions whether the plaintiff (the father) was negligent in permitting the boys to make such journey, and whether the older son was negligent, were properly submitted to the jury.

5. The jury having been instructed in effect that it was essential to a recovery that the older boy exercised the care and prudence of an adult person, there was no error in refusing an instruction that the father was guilty of negligence if the boys were of such tender years and discretion that they could not appreciate the danger of driving in the night or the importance of exercising ordinary care to avoid injury.

6. The jury having been told that ordinary care was such care as mankind generally would use under like circumstances, an instruction that they might use such knowledge as they possessed of the usage of mankind in general under such circumstances, was unnecessary and its refusal was not error.

7. A driver may be in the exercise of reasonable care although he is lying down upon his load, wrapped up in blankets.

8. Where the death of a person has resulted from a defect in a highway and the right of action for the whole damages therefor is in the administrator and the recovery is for the benefit of others, a notice under sec. 1339, R. S., either by the administrator or by one of the beneficiaries is sufficient to charge the town (if otherwise liable) for the whole damages. [Whether that section has any application to such a case, *quære.*]

APPEAL from the Circuit Court for *Iowa* County.

This is an action brought by the plaintiff as administrator of William Parish, deceased, under the statute (secs. 4255,

4256, R. S.), to recover damages resulting from the death of the intestate, alleged to have been caused by the insufficiency and want of repair of a public highway in the defendant town. The death occurred during the night of August 2, 1880. The summons herein was served April 13, 1883. It is unnecessary to set out the pleadings; sufficient reference to them will be found in the opinion.

The following statement of facts is taken from the brief of counsel for the town. A few necessary corrections have been made therein, but none of them are regarded very important. The statement is as favorable to the town as the evidence will justify.

The facts are substantially as follows: In the summer of 1880 the Chicago & Tomah Railroad Company (now the Chicago, Milwaukee & Northwestern Railway Company) was grading its road-bed through the defendant town. The main thoroughfare passing through the town is a highway running in an east and west direction, known as the military road. It is four rods in width, and built through a level prairie country. At the point where the accident happened the railroad had been located running diagonally across this highway from northeast to southwest, the angle of intersection being thirteen degrees, so that the railroad runs 319 feet in crossing the highway. On the north side of the highway the railroad has a grade of about one foot, which changes as it passes to the south side to a cut which, at the south limits of the highway, is two feet six inches in depth.

The accident happened Monday night, and it is conceded that up to the Saturday preceding, when the railroad hands commenced work at this point, the highway was in perfect condition. While the hands were at work at this point, Saturday, J. B. Johnson, road overseer of the road district, and who lived two and one half miles west on the same road, came along, and noticing the uneven condition of the highway, called upon the engineer in charge to have the highway

leveled off. This the engineer agreed to do, and called his men and set them at work leveling off the road in the highway, and Mr. Johnson went on home, leaving them at work. Mr. Johnson was not over the road again until after the accident, and had no other notice of the condition of the highway.

The father of deceased, and with whom he resided, was a farmer and miner, living at Centerville, about twenty miles from Mineral Point city. Deceased was, at the time of his death, nine years and four months old, and his brother Renwick (who was killed at the same time) was eleven years and six months old. Renwick had been working around home, plowing corn, teaming, etc., during that summer with a team of gray horses belonging to his father; had hauled ore some to Mineral Point, but whether he had ever been before in the night-time, the evidence does not disclose. The day before the accident, it rained, and the night was cloudy and dark. The day before the accident the oldest boy, Renwick, told his father he had got a load to take to Mineral Point, and wanted to go in that night, to which his father assented. The boy William went along to see the place, as he had never been there before and begged to go. The father of deceased had lived all his life near Centerville, and knew the character of the road from that place to Mineral Point. He says of the road: "From the time you leave Centerville till you struck the military road, near Cobb, it was a rough, hilly, sideling road, narrow in some places, and some not; some places teams could not pass one another."

These boys started out some time after sundown on the night of August 2, to pass over this road with a load of zinc ore, to go twenty miles on country roads to the city of Mineral Point. Between 9 and 10 o'clock they were heard passing the house of William Pettis, a farmer living about a mile and half west of the place of the accident. He heard them putting on the brake. About 2 o'clock in the morning

their team was found standing in the railroad cut on the south side of the highway, at the point before described, still attached to the wagon, which was completely capsized with its load, and the boys underneath. They were found by two teamsters, nearly opposite the residence of A. N. McCrady, and they being unable to find the driver called up Mr. McCrady's boy with a lantern, when they found one of the boys under the load, but could not see the other as he was completely covered with the wagon and its contents, and they had had no knowledge of his presence. Of the boy found, simply one leg was out from under the wagon, and they felt of this and found it cold, and, being satisfied that he was dead, they unhitched the horses from the wagon and put them in McCrady's barn, and the teamsters went on to Mineral Point, leaving everything else undisturbed. In the morning the wagon was removed, and the boys were found lying side by side between the bottom of the seat and the load of jack, both partly wrapped in robes and blankets, their faces towards the front end of the box. The oldest boy lay partially bent up, and had one hand bent as if clasping the reins. The testimony is conflicting as to whether the team was in the traveled path of the road at the time of the accident or not. When the wagon reached the cut it did not go straight down the bank, but the front wheel dropped partially in and dragged along on the bank for a few feet until the hind wheel dropped into the cut, and then the wagon tipped over. There were marks on the side of the cut to indicate that the off horse had struggled along on the bank for a few feet before going into the cut. The evidence was quite conflicting as to the condition of the highway, and as the verdict of the jury is decisive on that question on this appeal nothing need be said concerning it.

Deceased being but nine years old at the time of his death, of course left no wife nor lineal descendants, but left, him surviving, his father, *Henry F. Parish,* and his mother,

Alice Parish. On the 16th of August, 1880, a notice, as required by sec. 1339, R. S., was served upon a supervisor of the defendant town, which notice was signed by the father of deceased and his attorney, and stated that *he, the father,* claimed satisfaction from said town of Eden, for the loss of his sons, but no such notice was ever served on behalf of the mother of deceased. This notice was introduced in evidence against defendant's objection. The attempted appointment of plaintiff as administrator of. the deceased son, was made April 19, 1881, and on the 14th day of July, 1882, the plaintiff, as administrator, presented to the town clerk of the defendant town, to be filed in his office, a written claim for damages, with a written request that it be presented and laid before the town board of audit. The boy was killed August 2, 1880, and this action was commenced April 13, 1883, and the two years statute of limitations is pleaded in bar of the action. A special verdict was demanded by the defendant and returned by the jury. The same consists of the following questions submitted to the jury, and their answers thereto:

"1. Did the accident which resulted in the death of the boy, William Parish, occur within the limits of a public highway in the defendant town? Yes.

"2. Was the highway at the place of the accident insufficient? Yes.

"3. Was the accident that resulted in the death of the boy, William Parish, caused by a defect or insufficiency in a highway of the defendant town? Yes.

"4. Had the authorities of the defendant town actual notice of the defect in the highway before this accident, or had the defect existed for such a length of time that they must have known of it? Yes.

"5. If you find that the town authorities knew of such defect, or must have known of it, then answer this question: Had they reasonable time, after such knowledge or notice, to

Parish, Adm'r, etc. vs. The Town of Eden.

repair such defect or to warn travelers against it before this accident? Yes.

" 6. Was the father of William Parish negligent in permitting him to go to Mineral Point the night of the accident with his brother, Renwick? No.

"7. Was the boy, Renwick Parish, at the time of said accident, exercising ordinary care in managing and driving the team? Yes.

" 8. Was the plaintiff duly appointed the administrator of the estate of said William Parish, deceased, before this action commenced? Yes. (Answer directed by the court.)

" 9. Was the notice and claim for damages required by section 1339 of the Revised Statutes given to a supervisor of the defendant town within ninety days from the happening of the accident which resulted in the death of William Parish? Yes. (Answer directed by the court.)

" 10. Did the plaintiff file, or cause to be filed, in the town clerk's office of the defendant town, a statement of his claim for damages as such administrator on account of the death of said William Parish, to be laid before the town board of audit of said town of *Eden*, as required by section 824 of the Revised Statutes, and was this action commenced after ten days after the next annual town meeting of said town thereafter? Yes. (Answer directed by the court.)

" 11. If you answer questions 1, 2, 3, 4, 5, 7, 8, 9, and 10, by writing ' yes ' after them, and question No. 6 by writing ' no ' after it, then you will answer this question: What amount of damages do you find the plaintiff should recover from the defendant town? $1,300."

The court denied a motion for a new trial, and judgment for the plaintiff was rendered pursuant to the verdict. The defendant appeals from the judgment.

For the appellant there was a brief by *Aldro Jenks*, and the cause was argued orally by *Mr. Jenks* and *Mr. Wm. F. Vilas*. They contended, *inter alia*, that the plaintiff who

stayed at home and sent his two little children out in a night so dark that they could not see where they were going or what dangers were before them, to drive all night, without sleep, over a rough and dangerous road, should be held guilty of negligence as a matter of law, notwithstanding the jury found otherwise. See 1 Thomp. on Neg. 426; *Lewis v. B. & O. R. R. Co.* 38 Md. 588; *Sexton v. Zett*, 44 N. Y. 430; *Hickey v. B. & L. R. R. Co.* 14 Allen, 429; *Quinn v. I. C. R. R. Co.* 51 Ill. 495; *Morrison v. Erie R. R. Co.* 56 N. Y. 302; *Burrows v. Erie R. R. Co.* 63 id. 556; *Nicks v. Marshall*, 24 Wis. 139; *Delaney v. M. & St. P. R'y Co.* 33 id. 67; *Rothe v. M. & St. P. R'y Co.* 21 id. 256; *Cornelius v. Appleton*, 22 id. 635; *Langhoff v. M. & P. du C. R'y Co.* 23 id. 43; *Lawrence v. M., L. S. & W. R'y Co.* 42 id. 328.

For the respondent there was a brief by *Lanyon & Spensley*, attorneys, and *P. A. Orton*, of counsel, and the cause was argued orally by *Mr. Spensley*. They argued, among other things. that it is not negligence *per se* to travel upon a dark night. *Rector v. Pierce*, 3 N. Y. Super. Ct. 416; *Bly v. Haverhill*, 110 Mass. 520; *Stevens v. Boxford*, 10 Allen, 25; *Whitney v. Cumberland*, 64 Me. 541; *Reed v. Deerfield*, 8 Allen, 522. See, also, *Durant v. Palmer*, 29 N. J. Law, 544–8; *Wright v. Sanders*, 3 Keyes, 323; *Bronson v. Southbury*, 37 Conn. 199. It would not have been negligence to place even a boy of tender years in charge of a person so competent in every way to drive as Renwick was. *McMahon v. Mayor*, 33 N. Y. 642; *O'Flaherty v. Union R'y Co.* 45 Mo. 70; *Mulligan v. Curtis*, 100 Mass. 512; *Chicago & A. R. R. Co. v. Becker*, 84 Ill. 483; *Barksdull v. N. O. & C. R. R. Co.* 23 La. Ann. 180; *East Saginaw City R'y Co. v. Bohn*, 27 Mich. 503; *Ihl v. 42d St. R'y Co.* 47 N. Y. 317. What will, in a proper case, constitute negligence in parents in their care of their children *non sui juris* must necessarily be a question of fact for the jury, except in extreme cases. *Drew v. Sixth Ave. R. R. Co.* 26 N. Y. 49; *Honegsberger v.*

*Second Ave. R. R.* 1 Keyes, 570; *Cosgrove v. Ogden,* 49 N.
Y. 255; *Johnson v. C. & N. W. R'y Co.* 49 Wis. 529; *S. C.*
56 id. 274; *Hoppe v. C., M. & St. P. R'y Co.* 61 id. 357.
Even where the parent has been negligent in exposing his
child to danger, if the infant has not committed or omitted
any act which would constitute negligence in a person of
full discretion, an injury by the negligence of another can-
not be defended on the ground of contributory negligence
of the parent in not restraining the child.  2 Thomp. on
Neg. 1187; *Lynch v. Smith,* 104 Mass. 53; *Ihl v. 42d St. R.
R. Co.* 47 N. Y. 317; *McGarry v. Loomis,* 63 id. 104; *Fallon
v. C. P., N. & E. R. R. R. Co.* 64 id. 13; Shearm. & Redf.
on Neg. sec. 48; Wharton on Neg. secs. 313, 321.  There
was no proof here of negligence on the part of the intestate.
·Hence if Renwick was not guilty of negligence contributing
to the accident, the negligence of the father would be no
defense.  And the burden was on the defendant to show
such contributory negligence.  *Prideaux v. Mineral Point,*
43 Wis. 513; *Randall v. N. W. Tel. Co.* 54 id. 140; *Hoyt v.
Hudson,* 41 id. 105.  Renwick was not, as assumed by the
trial court, *non sui juris. Achtenhagen v. Watertown,* 18 Wis.
331; *McMahon v. Mayor,* 33 N. Y. 642; *Nagle v. Alleghany
R. R.* 88 Pa. St. 35; *Reynolds v. N. Y. C. & H. R. R. R.
Co.* 58 N. Y. 248.

LYON, J.  1. The complaint avers that the plaintiff brings
this action in his capacity of administrator of the estate of
William Parish, deceased, and then proceeds to allege that
he was duly appointed such administrator by the county
judge of Grant county.  The answer contains no specific
denial of either of these averments.  Because the county
court alone has jurisdiction to make such appointment, the
objection was taken at the trial, by a demurrer *ore tenus,*
that the plaintiff has not, by his complaint, shown that he
was properly appointed administrator.

The objection was not well taken. The complaint sufficiently shows that the plaintiff sues in the capacity of administrator, and it was open to him to prove on the trial that he had been duly appointed. He introduced his letters of administration in evidence, which show that he was duly appointed by the county court. Such appointment is under the seal of the court, is tested in the name of the judge thereof, and signed by him officially, and is in due form. The only objection interposed to this document was that it is nothing more than the act of the judge. The objection is unfounded in fact. The proof was properly received, and it establishes the plaintiff's right to maintain the action as such administrator.

2. The defendant alleged in its answer as defense that the cause of action did not accrue within two years prior to the commencement of the action, thus pleading the statute of limitations contained in subd. 3, sec. 4224, R. S. The same objection was also taken at the trial by a demurrer *ore tenus*. This defense is founded, upon the proposition that the service of the summons herein was the commencement of the action. Such service was made more than two years after the death of the intestate. But the service of the summons is not necessarily the commencement of the action within the meaning of that statute. Sec. 4242 provides that "the presentment of any claim, in cases where by law such presentment is required, to the county board of the proper county, the board of audit of the proper town, city, or village, to the commissioners appointed to allow claims against the estate of a deceased person, or, where no such commissioners are appointed, to the county court, shall be deemed the commencement of an action within the meaning of any law limiting the time for the commencement of an action thereon." The claim in this action was by law required to be presented to the board of audit of the proper town before any action could be

maintained upon it (sec. 824, R. S.); and if it was so presented within two years of the death of the intestate, the cause of action is not barred.

On July 14, 1882, the plaintiff, as administrator of the estate of the intestate, presented his written claim, in due form, for damages sustained by reason of the death of the said intestate, to the town clerk of the defendant town, with written directions to the clerk to file the same in his office, and to present the same to the town board. The town clerk is the clerk of the town board, and it is his duty to furnish to that board "all accounts, claims, and demands against the town filed with him." Subds. 7, 8, sec. 832, R. S. This clearly indicates that the town clerk is the proper officer with whom to file claims against the town. The town board has but two stated meetings in each year, one in March and the other in December (sec. 820, R. S.); and these are the only opportunities that any claimant has to present a claim against the town directly to the auditing board. We think a fair and reasonable construction of these statutes is that claims may be presented to the board of audit at any time; to the board directly, if in session, and if not in session, then to the clerk of the board. Upon any other construction of the statute, this claim must have been presented to the board at its March session in 1882, which was five months less than two years after the death of the intestate. The construction we place upon this statute gives every claimant the full term of two years in which to present his claim, and such was the manifest intention of the legislature. It must be held, therefore, that this action should be deemed to have been commenced July 14, 1882, and hence is not barred by the limitation of sec. 4224, R. S.

3. It is claimed on behalf of the defendant (contrary to the findings of the jury) that the proper officers of the town had no actual notice of the defect in the highway com-

plained of, and that such defect had not existed a sufficient length of time to charge the town with constructive notice thereof.

The plaintiff's intestate was killed on Monday night. Up to the preceding Saturday the highway at that point was in good repair, but on that day the same was dug up by the servants of the railroad company, and ditches were excavated in or near the traveled track, rendering the road defective and unsafe for travelers. On that same Saturday the overseer of the road district in which such highway was situated, saw its condition, and required the foreman of the men at work there for the railroad company to restore it to its former good condition. The foreman thereupon set some of his men at work to level the highway, and the overseer left the place and did not return to it. This was actual notice to the proper town officer of the defective condition of the highway, and eliminates from the case the necessity of considering the question of constructive notice. Undoubtedly the overseer left the place in the full belief that the highway would be at once restored. But that is not sufficient to relieve the town from liability to travelers receiving injuries because of the defect in the highway. It was the duty of the overseer to see to it that the highway was restored, and nothing short of that will relieve the town from liability to travelers. We conclude, therefore, that the findings of the jury in this respect are sustained by the evidence.

4. It is maintained on behalf of the town that the uncontradicted evidence shows that the plaintiff — the father of the intestate — was guilty of negligence, which contributed directly to the death of the intestate; that the elder brother Renwick, the driver of the team, was also guilty of like negligence. Hence it is claimed that the court erred in submitting the questions of the negligence of the plaintiff and Renwick to the jury. The negligence imputed to the plaint-

iff is that he permitted the boy Renwick to drive the team to Mineral Point in the night-time, over roads of the character described in the evidence, and that he permitted his son William to accompany his elder brother. The negligence imputed to Renwick is that there were many circumstances proved on the trial which indicated that he was lying down on the load, and was asleep when the accident happened.

As to the alleged contributory negligence of the plaintiff the case in principle is like that of *Hoppe v. C., M. & St. P. R'y Co.* 61 Wis. 357. In that case the deceased — a mere infant — was left by the mother in charge of an elder brother seven years of age. The child wandered from his brother, went on the railroad track, and was killed by a passing train. It was argued that the mother was guilty of negligence in leaving the deceased with a boy of such tender years. But this court held that the alleged contributory negligence of the mother was not conclusively established, but was a question for the jury. The grounds upon which that decision is rested need not be repeated here. They are peculiarly applicable to this case. Indeed, this is a stronger case for the plaintiff; for there was no testimony in that case to show the capacity of the boy in whose charge the deceased was left, while here we have abundant evidence that Renwick was experienced and capable beyond his years in the use of horses, and was driving a very gentle, reliable team.

Whether Renwick was or was not guilty of contributory negligence depends upon the inference to be drawn from many facts and circumstances proved on the trial, and it is the peculiar province of a jury to determine such inference. We think there was no error in submitting those questions of contributory negligence to the jury.

5. No exception was taken to the charge of the circuit judge to the jury, but due exceptions were taken to his re-

fusal to give certain instructions proposed on behalf of the defendant. One of these is to the effect that the plaintiff was guilty of negligence in permitting his children to be upon the road at the time they were, killed, if they were of such tender years and discretion that they could not appreciate the danger of driving on a dark night upon the public highways, or the importance of exercising ordinary care to avoid injury. This instruction was entirely unnecessary, because the court charged the jury, in substance and effect, that it was essential to a recovery in the action that Renwick exercised the care and prudence of an adult person, and the verdict of the jury establishes the fact that he was in the exercise of that degree of care and prudence when the accident happened. If, as to Renwick, the court modified the rule of ordinary care required of an adult, it was done at the request of defendant.

Two of the proposed instructions are to the effect that if Renwick was asleep at the time of the accident, or, not being asleep, if he was then lying down upon the load, wrapped in blankets; in either case it was contributory negligence on his part, and the plaintiff could not recover. It is very doubtful whether the jury would have been justified, under the evidence, in finding that Renwick was asleep at the time of the accident, and it is not a correct proposition of law that he was negligent, if, being awake, he was then lying down upon his load, wrapped in blankets. A driver reclining in his wagon may be in the exercise of reasonable care, and it was for the jury to say, in view of all the surrounding circumstances, whether Renwick was in the exercise of such care. The charge of the circuit judge, on the subject of negligence in all its aspects, as applicable to the case, was full and accurate,— so full and so accurate that we cannot properly disturb the judgment because of his failure to give the proposed instructions, even though they were supported by the evidence and contained correct

propositions of law; but they are unobjectionable in both particulars.

Another, and the last of the proposed instructions which the court refused to give, was, that, in determining whether the plaintiff was negligent in permitting William to go to Mineral Point on the night of the accident, "the jury are authorized, and it is their duty, to exercise such knowledge as they may possess of the usage of mankind in general, in permitting children, such as these were, to drive teams upon the highway in the night-time." Perhaps this proposed instruction might have been given without committing error; but it was rendered unnecessary by the general charge, in which the court substantially referred the question of the plaintiff's contributory negligence to the common knowledge of the jury. The jury were instructed that ordinary care was such care as mankind generally would use under the like circumstances. As a matter of course, the jurors were compelled to resort to their common knowledge of the general conduct of mankind under such circumstances, in order to determine whether the plaintiff was or was not in the exercise of ordinary care when he permitted his boys to go to Mineral Point. Moreover, a specific instruction that jurors are at liberty to avail themselves of common knowledge in determining a question of fact submitted to them, is scarcely necessary. Such knowledge is inherent in the mind, and is inevitably resorted to in testing the value of other evidence upon a given proposition of fact.

6. No exception was taken on behalf of the defendant to any question of fact submitted to the jury, but counsel for defendant asked that several other questions be also submitted, which request was refused. These proposed questions are as follows: (1) At the time of the accident, was Renwick lying down on the load? (2) Was he asleep? (3) and (4) Same questions as to William. (5) Was the road between Centerville and Mineral Point a dangerous one?

(6) Was the condition of it known to the plaintiff when the children started on this journey? (7) Did they start on the journey with the plaintiff's permission? (8) Had either of them sufficient age and discretion to render it reasonably safe for them to have the care and management of this team of horses driving on this road in the night-time? For reasons already stated, the first four of these questions were properly rejected. The remaining questions, so far as they are material to the case, are all covered by and included in the questions which were submitted to the jury. There is no conflict in the testimony as to the condition of the road between Centerville and Mineral Point, and it is not denied that plaintiff knew its condition at the time of the accident, except that he had no knowledge that the road had been rendered unsafe at the place of accident. Neither is it denied that he permitted his children to start for Mineral Point on the evening of the accident. The proposed questions were properly rejected.

7. Within ninety days after the death of the intestate the plaintiff gave notice to the defendant town, pursuant to sec. 1339, R. S., of the death of his son by reason of the alleged insufficiency of the highway, and that he claimed satisfaction therefor. In form the notice is a compliance with that statute. The mother of the intestate did not join therein, and gave no such notice to the town. The damages recovered in this action belong to the plaintiff and his wife, pursuant to sec. 4256, R. S. Because the mother of the deceased has not thus notified the town, it is claimed that she has no interest in the recovery herein, and hence that judgment should be rendered for the plaintiff for only one half the damages assessed by the jury. We strongly incline to the opinion that the provisions of sec. 1339, R. S., requiring notice to the town, have no application in this case, or any other, where death results from the injury complained of. That section gives a right of action to the person sustaining

the damage complained of, and requires *him* to give the notice; but it does not expressly provide that such notice shall be given by the administrator, or beneficiaries in a recovery, when the accident results in death. There are many apparently good reasons why the legislature did not intend the statute to cover such a case. However, we do not determine that question here, but dispose of the case on the hypothesis that the statute is applicable thereto.

Whatever the rule may be, if several persons suffer damage by the same accident, caused by a defective highway (in which case the damages are necessarily several and not joint), we are of the opinion, and so hold, that in this case, in which the right of action for the whole damages is in the administrator, and the recovery is for the joint benefit of the father and mother of the deceased, notice, either by the administrator or one of the beneficiaries, is sufficient to charge the town (if otherwise liable) for the whole damages. Such a notice informs the town of the location and nature of the alleged defect in the highway, and that damages are claimed for the death of the intestate. This is all the statute requires. Had it been given by the administrator, there can be no doubt it would have laid a foundation for the recovery of full damages. No good reason is perceived why the same notice, given by one of several persons entitled to the benefit of the recovery, does not have the same effect.

It is believed that the foregoing observations dispose of all the material errors assigned as grounds of reversal. The record fails to disclose any error, and the judgment cannot properly be disturbed.

*By the Court.*— Judgment affirmed.