CORA NEWMAN, BY HER NEXT FRIEND, ELLIS H. NEWMAN, v. PHILLIPSBURG HORSE CAR RAILROAD COMPANY.

1. An infant of tender years is not to be charged with the negligence of the person having it in charge.
2. The plaintiff, about two years of age, being under the care of her adult sister, wandered on to the track of the horse railroad company, and was there run over by the carelessness of the driver of the car. *Held*, that plaintiff's right of action was not lost, even if the sister's carelessness of supervision in part was cause of her injury.

---

The plaintiff was a child two years of age; she was in the custody of her sister, who was twenty-two; the former, being left by herself for a few minutes, got upon the railroad track of the defendant, and was hurt by the car. The occurrence took place in a public street of the village of Phillipsburg. The carelessness of the defendant was manifest, as at the time of the accident there was no one in charge of the horse drawing the car, the driver being in the car collecting fares.

The Circuit judge submitted the three following propositions to this court for its advisory opinion, viz. :

*First.* Whether the negligence of the persons in charge of the plaintiff, an infant minor, should be imputed to the said plaintiff.

*Second.* Whether the conduct of the persons in charge of the plaintiff at the time of the injury complained of, was not so demonstrably negligent that the said Circuit Court should have non-suited the plaintiff, or that the court should have directed the jury to find for the defendant.

*Third.* Whether a new trial ought not to be granted, on the ground that the damages awarded are excessive.

Argued at February Term, 1890, before BEASLEY, CHIEF JUSTICE, and Justices SCUDDER, DIXON and REED.

For the plaintiff, *Messrs. Shipman & Son.*

For the defendant, *William H. Morrow.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. There is but a single question presented by this case, and that question plainly stands among the vexed questions of the law.

The problem is, whether an infant of tender years can be vicariously negligent, so as to deprive itself of a remedy that it would otherwise be entitled to. In some of the American states this question has been answered by the courts in the affirmative, and in others in the negative. To the former of these classes belongs the decision in *Hatfield* v. *Rofer & Newell,* reported in 21 *Wend.* 615. This case appears to have been one of first impression on this subject, and it is to be regarded, not only as the precursor, but as the parent of all the cases of the same strain that have since appeared.

The inquiry with respect to the effect of the negligence of the custodian of the infant, too young to be intelligent of situations and circumstances, was directly presented for decision in the primary case thus referred to, for the facts were these, viz. : The plaintiff, a child of about two years of age, was standing or sitting in the snow in a public road, and in that situation was run over by a sleigh driven by the defendants. The opinion of the court was, that as the child was permitted by its custodian to wander into a position of such danger it was without remedy for the hurts thus received, unless they were voluntarily inflicted, or were the product of gross carelessness on the part of the defendants. It is obvious that the judicial theory was, that the infant was, through the medium of its custodian, the doer, in part, of its own misfortune, and that, consequently, by force of the well known rule, under such conditions, he had no right to an action. This,

of course, was visiting the child for the neglect of the custodian, and such infliction is justified in the case cited in this wise : " The infant," says the court, " is not *sui juris.* He belongs to another, to whom discretion in the care of his person is exclusively confided. That person is keeper and agent for this purpose ; in respect to third persons his act must be deemed that of the infant ; his neglects the infant's neglects."

It will be observed that the entire content of this quotation is the statement of a single fact, and a deduction from it, the premise being, that the child must be in the care and charge of an adult, and the inference being that, for that reason, the neglects of the adult are the neglects of the infant. But surely this is, conspicuously, a *non sequitur.* How does the custody of the infant justify, or lead to, the imputation of another's fault to him ? The law, natural and civil, puts the infant under the care of the adult, but how can this right to care for and protect be construed into a right to waive, or forfeit, any of the legal rights of the infant ? The capacity to make such waiver or forfeiture is not a necessary, or even convenient, incident of this office of the adult, but, on the contrary, is quite inconsistent with it, for the power to protect is the opposite of the power to harm, either by act or omission. In this case in Wendell it is evident that the rule of law enunciated by it is founded in the theory that the custodian of the infant is the agent of the infant ; but this is a mere assumption without legal basis, for such custodian is the agent, not of the infant, but of the law. If such supposed agency existed, it would embrace many interests of the infant, and could not be confined to the single instance where an injury is inflicted by the co-operative tort of the guardian. And yet it seems certain that such custodian cannot surrender or impair a single right of any kind that is vested in the child, nor impose any legal burthen upon it. If a mother traveling with her child in her arms should agree with a railway company, that in case of an accident to such infant by reason of the joint negligence of herself and the company the latter should not be liable to a suit by the child, such an engage-

ment would be plainly invalid on two grounds—*first,* the contract would be *contra bonos mores,* and, *second,* because the mother was not the agent of the child authorized to enter into the agreement.    Nevertheless, the position has been deemed defensible that the same evil consequences to the infant will follow from the negligence of the mother in the absence of such supposed contract, as would have resulted if such contract should have been made and should have been held valid.

· In fact, this doctrine of the imputability of the misfeasance of the keeper of a child to the child itself, is deemed to be a pure interpolation into the law, for until the case under criticism it was absolutely unknown ; nor is it sustained by legal analogies.    Infants have always been the particular objects of the favor and protection of the law.    In the language of an ancient authority this doctrine is thus expressed :  " The common principle is, that an infant in all things which sound in his benefit shall have favor and preferment in law as well as another man, but shall not be prejudiced by anything in his disadvantage."    9 *Vin. Abr.* 374.    And it would appear to be plain that nothing could be more to the prejudice of an infant than to convert, by construction of law, the connection between himself and his custodian into an agency to which the harsh rule of *respondeat superior* should be applicable.    The answerableness of the principal for the authorized acts of his agent is not so much the dictate of natural justice as of public policy, and has arisen, with some propriety, from the circumstances, that the creation of the agency is a voluntary act, and that it can be controlled and ended at the will of its creator.    But in the relationship between the infant and its keeper, all these decisive characteristics are wholly wanting. The law imposes the keeper upon the child, who, of course, can neither control or remove him, and the injustice, therefore, of making the latter responsible, in any measure whatever, for the torts of the former, would seem to be quite evident.    Such subjectivity would be hostile, in every respect, to the natural rights of the infant, and, consequently, cannot, with any show of reason, be introduced into that provision

which both necessity and law establish for his protection. Nor can it be said that its existence is necessary to give just enforcement to the rights of others. When it happens that both the infant and its custodian have been injured by the co-operative negligence of such custodian and a third party, it seems reasonable, at least in some degree, that the latter should be enabled to say to the custodian, you and I, by our common carelessness, have done this wrong, and, therefore, neither can look to the other for redress; but when such wrongdoer says to the infant, your guardian and I, by our joint misconduct, have brought this loss upon you, consequently you have no right of action against me, but you must look for indemnification to your guardian alone, a proposition is stated that appears to be without any basis either in good sense or law. The conversion of the infant, who is entirely free from fault, into a wrongdoer, by imputation, is a logical contrivance uncongenial with the spirit of jurisprudence. The sensible and legal doctrine is this, an infant of tender years cannot be charged with negligence; nor can he be so charged with the commission of such fault by substitution, for he is incapable of appointing an agent, the consequence being, that he can, in no case, be considered to be the blamable cause, either in whole or in part, of his own injury. There is no injustice, nor hardship, in requiring all wrongdoers to be answerable to a person who is incapable either of self protection or of being a participator in their misfeasance.

Nor is it to be overlooked that the theory here repudiated, if it should be adopted, would go the length of making an infant in its nurse's arms answerable for all the negligences of such nurse while thus employed in its service. Every person so damaged by the careless custodian would be entitled to his action against the infant. If the neglects of the guardian are to be regarded as the neglects of the infant, as was asserted in the New York decision, it would, from logical necessity, follow, that the infant must indemnify those who should be harmed by such neglects. That such a doctrine has never

prevailed is conclusively shown by the fact that in the reports there is no indication that such a suit has ever been brought.

It has already been observed that judicial opinion, touching the subject just discussed, is in a state of direct antagonism, and it would, therefore, serve no useful purpose to refer to any of them. It is sufficient to say, that the leading text writers have concluded that the weight of such authority is adverse to the doctrine that an infant can become, in any wise, a tortfeasor by imputation. 1 *Shearm. & R. Neg.*, § 75; *Whart. Neg.*, § 311; 2 *Wood Railw. L., p.* 1284.

In our opinion, the weight of reason is in the same scale.

It remains to add that we do not think the damages so excessive as to place the verdict under judicial control.

Let the Circuit Court be advised to render judgment on the finding of the jury.