The Atchison, Topeka and Santa Fe Railway Company
v. Samuel Calhoun, *By* Anna Calhoun, *his Next
Friend.*

(Filed February 13, 1907.)

1. **NEGLIGENCE—Parent and Child—Torts.** In an action by an infant of tender years, in its own right, for personal injuries arising from negligence of a railway company, the fault or negligence of its mother or a third party, if any, contributing to such injury cannot be imputed to the child.

2. **CARRIERS—Degree of Care Required—Duties.** A common carrier of persons for hire or reward must use the utmost care and diligence for their safe carriage, and must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of care and skill. Among these duties which devolve upon a railway company are: (a) It is the duty of a railway company to announce the approach of a station where passengers are to disembark: (b) To afford passengers reasonable time and opportunity, under the circumstances, to embark and disembark: (c) To provide reasonable platform facilities for persons to disembark and embark with safety: (d) To keep the station and platforms, at night, lighted in a reasonable manner; and (e) To keep the depot and platform free from dangerous obstructions.

3. **SAME—**In this case the evidence discloses that the railroad company was negligent in the following respects: (a) In failing to call or announce the station: (b) In failing to stop a reasonable length of time to permit passengers to disembark and embark: (c) In not lighting its platform: (d) In permitting a dangerous obstruction to remain upon the platform at a point where passengers ought to have been able to embark and disembark with reasonable safety; and (e) In permitting the train to leave the station without the exercise of reasonable care in observing whether passengers had safely disembarked and embarked. Held: That the injury sustained by the plaintiff in this case was not due to the independent wrongful act of a responsible human agency, but was solely due to the negligence of the railway company and its servants and employes.

4. INSTRUCTIONS—Numbering. Where the instructions were reduced to writing, and clearly and concisely stated the law, the mere failure to number them did not constitute reversible error.

5. EVIDENCE—Sufficient, When. The evidence in this case examined and considered, and held to be sufficient to sustain the general verdict and the special findings of the jury.

(Syllabus by the Court)

*Error from the District Court of Oklahoma County; before B. F. Burwell, Trial Judge.*

*Henry E. Asp, Charles H. Woods,* and *George M. Green* for plaintiff in error.

*Henry H. Howard,* for defendant in error.

### STATEMENT OF FACTS.

This action was brought by Samuel Calhoun, an infant between two and three years old, by Anna Calhoun, his mother and next friend, to recover damages for personal injuries alleged to have been sustained by reason of the negligence of the defendant railway company. The material averments in the petition were, substantially, that the plaintiff was a minor, of the age of three years. That on August 24, 1903, Anna Calhoun, the mother of Samuel Calhoun, purchased a ticket from the defendant railway company at Arkansas City, Kansas, for passage on a regular passenger train to Edmond, Oklahoma, paying the regular fare therefor. That after taking passage upon the train with her infant child, the conductor took up her ticket, and issued her the usual check that is given to passengers, indicating the station which was her destination. That the plaintiff had never been over this line of road prior thereto. The train was late, and did not reach Edmond until about 11.30 o'clock that night. That

the servants of the railway company had failed to call the station of Edmond as the train approached. That the plaintiff's mother received no warning that she had reached her destination. That the train stopped an unreasonably short time to permit passengers to disembark. That the platform was dark, so dark that it was impossible to distinguish objects within a very short distance. That no assistance was given the plaintiff to disembark from the train. That while lamps were attached to the sides of the depot for the purpose of lighting the platform, they were not burning. The plaintiff says further, that when said train arrived at said station, the night was very dark; that defendant had previously caused lamps to be placed at its depot, station and usual place of alighting at said station of Edmond; that said lights are necessary, usual and reasonable for the safety and accomodation of passengers alighting from trains in the night time; that the servants of defendant carelessly and negligently failed to light said lamps, and the same were not burning at the time said train arrived at said station; that because of such neglect, it was impossible for said passengers to see so as to know when said station was reached, or to see or distinguish persons or other objects at the place of alighting from said train; that the servants of defendant had placed and left a certain truck, belonging to the defendant and under its control, near to said train and the place of alighting therefrom at said station, in a careless and negligent position, and standing diagonal to said train, and which it was impossible to see, because of the darkness occasioned by the failure to light said lamps, and which was not in use or there for any lawful or necessary purpose, and which was

there, and in such position at the time of the arrival of said train at said station. That after said train had arrived at said station of Edmond, and had stopped thereat, and with no information from the servants of the defendant, the said passengers learned the fact from other passengers thereon; that none of said servants came to offer or afford any assistance to said passengers in alighting from said train; that knowing of the duty of said servants to give such assistance and relying upon the performance of said duty, and expecting them or some of them to appear at the exit from said train, for the purpose of rendering such assistance, the said passengers undertook to alight from said train; that at the exit from said train, said Samuel Calhoun was taken from the train by one Carl Jones, and before said Anna Calhoun could alight from said train, the same was carelessly and negligently put in motion by the said servants of defendant; that said Jones was dressed in uniform and because of such darkness so occasioned, it was impossible to distinguish him from servants of defendant in charge of said train, who were likewise so dressed; that said Anna Calhoun believed said Jones to be one of said servants. and that he was taking said Samuel Calhoun, in pursuance of his duties as said servant and that while said train was moving she believed the same to be temporarily moving for. a short distance, for some proper purpose in connection with the operation thereof and that the same would again soon stop to enable her to alight therefrom, because of which said facts she remained upon the platform or steps of one of the cars of said train while the same was in motion, and that said Jones for the civil purpose of avoiding the separation of her from her child carried said Samuel

Calhoun along beside of said train, at and near the usual place of alighting therefrom; that while carrying said child and because of the darkness so occasioned by the carelessness and negligence of the defendant, in the failure of its servants to light said lamps and in leaving said truck so placed, which said Jones was unable to see by said darkness he came in contact therewith; that the violence occasioned by said contact compelled the said Jones to let go said child who because of his tender age and inability to protect himself was thereby thrown under said train, and the wheels of one of the cars thereof passed over his right foot and leg, severing the same, whereby the said foot and lower part of said leg was wholly lost and destroyed, rendering the said Samuel Calhoun a permanent cripple, disabling him from physical and manual efforts and labor, occasioning an outlay of a large sum of money for surgeon's and doctor's fees, to wit: Two hundred dollars ($200.00), and permanently impairing his health and rendering him unable of earning a livelihood by the usual efforts of life, all to his damage in the sum of twenty-five thousand ($25,000.00) dollars, and all of which was directly due to the negligence and carelessness of the defendant in the failure of its servants to take up said check, to announce the approach or arrival of said train and to advise said passengers thereof, and to assist them in alighting therefrom, and negligently and carelessly failing to light said lamps, and in carelessly and negligently placing said truck, and failing to assist said passengers to alight from said train and because of the dangerous condition of the said place of alighting, occasioned by the darkness and the dangerous position of said truck, and the careless and negligent failure to

stop said train at said station long enough to enable said passengers to alight therefrom in safety, and the careless and negligent starting of said train before said passengers had alighted.

The railway company filed an answer consisting: First, of a general denial; and second, stating that the injuries which the plaintiff sustained, were due to the carelessness and negligence of the plaintiff's mother, and one Carl Jones, to whom the plaintiff had been entrusted, and which negligence contributed directly to the injury complained of, and on account of which the plaintiff is not entitled to recover.

To this answer, the plaintiff filed a reply consisting of a general denial.

Upon the issues thus joined, the cause was submitted to a jury, and a verdict was returned in favor of the plaintiff, assessing his recovery at $10,000.00. The railway company submitted a number of special interrogatories to the jury, which were returned with the general verdict, and a motion was made to render judgment upon the special findings of the jury, notwithstanding the general verdict, which motion was overruled, and exception saved. Thereupon the court approved the general verdict and entered judgment accordingly. Motion for new trial was duly filed, considered, and overruled, and exception noted, and the case is brought here for review, on petition in error and case made.

Opinion of the court by

HAINER, J.: The first question presented is whether in a suit by an infant of the age of three years, by its next friend, and in its own right, for personal injuries, negligence

of a parent or some third person can be imputed to the child, and thereby defeat a recovery. The authorities upon this question are not entirely harmonious, but by the great preponderance of the adjudged cases it is held that the negligence of a parent, guardian, or custodian is not imputable to the child, on the ground that it is not, and cannot be responsible for the danger to which it is exposed. That it has no volition in establishing the relation of privity with the person whose negligence it is sought to impute to it, and should not and cannot be charged with the negligence of such person in permitting it to be exposed to a danger which it had not the capacity either to know or understand, or to avoid in any manner whatever. This doctrine, it seems to us, is based upon solid reason, and is certainly in consonance with right and justice, and has been adopted in at least twenty-two states and the District of Columbia. A collation of the authorities may be found on page 450 of volume 7 of the American and English Encyclopaedia of law, second edition. This doctrine has been adopted by the circuit court for the district of Indiana, in *Berry v. Lake Erie, etc., R. Co.*, 70 Fed. Rep. 679; and by the United States circuit court of appeals for the eight circuit, in *Chicago G. W. Ry. Co. v. Kowalski*, 92 Fed. Rep. 310. In the latter case Circuit Judge Thayer, after reviewing the authorities concludes as follows:

"We think that there is at the present time a decided preponderance of authority in favor of the doctrine that, in a suit brought by an infant in its own right for personal injuries, its parents' fault or negligence cannot be imputed to the child. In view of the general trend of the authorities, it is highly probable that this view will ultimately prevail in the courts of last resort, of all the states composing this

6--Vol. 18

circuit which have not already adopted it, and for that reason, among others, we think that it should be sanctioned by this court. The judgment of the lower court is therefore affirmed."

The leading case in this country holding the contrary doctrine is *Hartefield v. Roper,* 21 Wend. 615, decided in 1839, by the supreme court of New York, which doctrine, it seems, has been adhered to in that state.

The New York doctrine has been followed in Massachusetts in the case of *Gibbons v. Williams,* 135 Mass. 333; in Maine, in the case of *Brown v. Railway Co.,* 58 Me. 384; in Minnesota, in *Filzgerald v. Railway Co.,* 39 Minn. 336; in California, in *Meeks v. Railroad Co.,* 52 Cal. 602; and in Wisconsin, in *Parish v. Town of Eden,* 62 Wis. 272, 22 N. W. 399; and in a few other states.

The doctrine of *Hartefield v. Roper* was repudiated as early as 1850 by the supreme court of Vermont, in the case of *Robinson v. Cone,* 22 Vt. 213; in an able decision rendered by Judge Redfield.

In *Newman v. Phillipsburg Horse-Car R. Co.,* 52 N. J. L. 446, 19 Atl. Rep. 1102, Chief Justice Beasley, in a learned opinion, criticises the doctrine announced in *Hartefield v. Roper,* as follows:

"In this case, in 21 Wend. 615, it is evident that the rule of law enunciated by it is founded in the theory that the custodian of the infant is the agent of the infant. But this is a mere assumption without legal basis, for such custodian is the agent, not of the infant, but of the law. If such supposed agency existed, it would embrace many interests of the infant, and could not be confined to the single

instance when an injury is inflicted by the co-operative tort of the guardian. And yet it seems certain that such custodian cannot surrender or impair a single right of any kind that is vested in the child, nor impose any legal burden upon it. If a mother, traveling with her child in her arms, should agree with a railway company, that, in case of an accident to such infant by reason of the joint negligence of herself and the company, the latter should not be liable to a suit by the child, such an engagement would be plainly invalid on two grounds: First, the contract would be *contra bonos mores;* and second, because the mother was not the agent of the child authorized to enter into the agreement. Nevertheless the position has been deemed defensible that the same evil consequence to the infant will follow from the negligence of the mother, in the absence of such supposed contract, as would have resulted if such contract should have been made, and should have been held valid.

"In fact, this doctrine of the imputability of the misfeasance of the keeper of a child to the child itself is deemed to be a pure interpolation into the law, for, until the case under criticism, it was absolutely unknown, nor is it sustained by legal analogies. Infants have always been the particular objects of the favor and protection of the law. In the language of an ancient authority, this doctrine is thus expressed: 'The common principle is that an infant, in all things which sound in his benefit, shall have favor and preferment in law as well as another man, but shall not be prejudiced by anything to his disadvantage.' 9 Vin. Abr. 374. And it would appear to be plain that nothing could be more to the prejudice of an infant than to convert, by construction of law, the connection between himself, and his custodian, into an agency to which the harsh rule of *respondeat superior* should be applicable. The answerableness of the principal for the authorized acts of his agent is not so much the dictate of natural justice as of public policy, and has arisen, with

some propriety, from the circumstances that the creation of the agency is a voluntary act, and that it can be controlled and ended at the will of its creator. But in the relationship between the infant and its keeper all these decisive characteristics are wholly wanting. The law imposes the keeper upon the child, who, of course, can neither control nor remove him; and the injustice, therefore, of making the latter responsible in any measure whatever for the torts of the former would seem to be quite evident. Such, subjectively, would be hostile in every respect to the natural rights of the infant, and consequently cannot, without any show of reason, be introduced into that provision which both necessity and law establish for his protection."

In *Berry v. Lake Erie & W. R. Co., supra,* District Judge Baker, speaking for the court, said:

"The doctrine which imputes to an infant *non sui juris* the negligence of its parent or guardian, seems to be unsound in principle, and is not supported by the weight of authority. It is yielding to the more enlightened and humane rule which denies the doctrine of imputed negligence in relation to infants incapable of exercising care for their own safety."

My conclusion, then, on this branch of the case is that the trial court properly held that the negligence, if any, of the mother or of Carl Jones, could not be imputed to the infant child.

But is is earnestly contended by the railway company that the injuries complained of were due solely to the independent wrongful act of a responsible human agency, to wit, the act of Carl Jones, whose negligence was the direct and proximate cause of the injury, and whose negligence could not have been reasonably anticipated by the railway company, or its servants. This doctrine is clearly stated by

Mr. Ray, in his work on Negligence of Imposed Duties, Passenger Carriers, page 669, where it is stated:

"But where the concurrent cause is the independent, wrongful act of a responsible person, such act arrests action, being regarded as the proximate cause of the injury, the original negligence being considered as its remote cause. As in the law it is the proximate and not the remote cause, which is regarded, he who is guilty of the original negligence is not chargeable, but redress must be sought from him who directly caused the injury."

And the same doctrine is fully and clearly discussed in the brief of counsel for plaintiff in error. Perhaps one of the best considered cases is the case of *Missouri Pac. Ry. Co. v. Columbia,* 69 Pac. Rep. 338, in which Justice Pollock, speaking for the supreme court of Kansas, discusses this question in an elaborate opinion, and in which case the facts may be briefly stated as follows:

"C. D. Columbia, a locomotive fireman in the employ of the Missouri Pacific Railway Company, was killed by the derailment of his engine at the station of Langley, on said road. His widow, Jennie V. Columbia, in her own behalf and in behalf of her minor children, brought this action to recover damages on account of negligence of the company resulting in his death. The acts of negligence charged are: First, that the company negligently permitted several heavy grain doors to be piled and remain upon a raised platform at the west end of its depot, at the station of Langley, near the track upon which the engine which Columbia was firing, was scheduled to pass on, the night of May 9, 1899, and said heavy grain doors, being there so negligently placed, were blown off, falling upon the track, derailing the engine, causing the death: Second, that it was the duty of the company to provide a reasonably safe and clear track over which said

engine should run, and in disregard of its duty in this respect. the company negligently permitted said heavy grain doors to remain upon the track after being blown there by the wind, thus obstructing the track, rendering it unsafe for use, the result of which negligence, caused the death of Columbia."

It will thus be seen that the direct and proximate cause of the injury in that case was a severe gale, for which the railroad company was in no manner responsible, and hence the court properly held that:

"In a case where two distinct, successive causes, wholly unrelated in operation, contribute toward the production of an accident resulting in injury and damage, one of such causes must be the proximate and the other the remote cause of the injury.

"A prior and remote cause cannot be made the basis of an action for the recovery of damages if such remote cause did nothing more than furnish the condition or give rise to the occasion by which the injury was made possible, if there intervened between such prior or remote cause and the injury a distinct, successive, unrelated and efficient cause of the injury."

But the facts in the case under consideration, are clearly distinguishable from the facts in the Kansas case. In this case the direct and proximate cause of the injury was directly attributable to the truck, which the servants of the railway company negligently permitted to remain upon the platform, which was dark, in fact so dark that an obstruction could not be observed by the exercise of reasonable care. Had the platform been free from obstruction, or had it been lighted so that passengers could have observed the obstruction by the exercise of reasonable care, we think the accident would have been avoided.

In *Chicago, R. I. & P. Ry. Co. v. Stibbs,* 87 Pac. Rep. 293, this court laid down the rule that:

"A common carrier of persons for hire or reward must use the utmost care and diligence for their safe carriage, and must provide everything necessary for that 'purpose, and must exercise to that end a reasonable degree of skill."

What are some of these duties which devolve upon a railroad company? (1) It is the duty of a railway company to notify or warn passengers of the approach of a station where passengers are to disembark: (2) To afford passengers reasonable time and opportunity, under the circumstances, to embark and disembark: (3) To provide reasonable platform facilities for persons to disembark with safety: (4) To keep the station and platform lighted in a reasonable manner: (5) To keep the depot and platform free from dangerous obstructions.

In what respect does the evidence show that the railway company was negligent in this case? While the evidence was conflicting, it appears from the weight of the testimony that the servants of the railway company failed to announce the station as the train approached Edmond: Second, that the train did not stop a reasonable time to permit passengers to disembark: Third, that the depot platform was dark: Fourth, that the lamps at the station platform were not lighted: Fifth, that the servants of the railway company had left the truck, belonging to the defendant company and under its control near to the train and the place of alighting therefrom at said station, and in such a position that it was impossible to observe it, on account of the darkness of the night and the darkness of the platform, by the exercise of reason-

able care.   In all these respects it appears from the clear
weight of the testimony that the railway company and its
servants were guilty of negligence.   Hence we think that
the facts in this case are clearly distinguishable from the
facts of the cases cited by counsel for plaintiff in error.   We
have examined the authorities cited in the brief, and we have
no serious criticism to make in regard to the general principle
of law announced therein, but believe that the facts in those
cases are clearly distinguishable from the facts in the case now
under consideration.   The law of direct and proximate cause
of injury seems to be well settled by the authorities, but the
difficulty the courts have is in applying the law to the facts
of each particular case.

In *Insurance Company v. Tweed,* 74 U. S., 44-52, Mr.
Justice Miller, in discussing this question, uses the following
language:

"If we could deduce from them the best possible ex-
pression of the rule, it would remain after all, to decide each
case largely upon the special facts belonging to it, and often
upon the very nicest discriminations.

"One of the most valuable of the *criteria* furnished
us by these authorities, is to ascertain whether any new cause
has intervened between the fact accomplished and the alleged
cause.   If a new force or power has intervened of itself suf-
ficient to stand as the cause of the misfortune, the other
must be considered as too remote."

In the present case there were a number of negligent
acts by the railway company.   It was negligent in not an-
nouncing the station; it was negligent in failing to stop a
reasonable length of time at the station to permit the plain-
tiff to disembark; it was negligent in permitting its plat-

form to be practically in total darkness; it was negligent in permitting a dangerous obstruction to remain upon the dark platform at a point where passengers expected to embark and disembark with reasonable safety; and, finally, it was negligent in permitting the train to leave the station without the exercise of reasonable care in observing whether passengers had safely embarked and disembarked. It is impossible to carefully read and scrutinize the entire record without reaching the conclusion that the conductor and his crew were guilty of culpable negligence, and that by the exercise of such reasonable care and caution as a prudent person ought to exercise under the circumstances of this case, the railway company could have avoided the severe consequences of this case. This disposes of two main propositions involved in the case, and now we will briefly consider the specific errors assigned and argued in the brief.

It is argued that the court erred in failing to separately state and number his instructions to the jury, and erred in not properly stating the law of the case in such instructions, and in refusing instructions requested by the defendant. At the conclusion of the testimony, the court instructed the jury in writing, but it seems that by some inadvertence the instructions were not numbered. While our statute requires the instructions to be reduced to writing and numbered, when requested by either party, the mere failure to number each instruction separately, in our opinion, is not sufficient to constitute reversible error. The instructions in this case were reduced to writing, and each proposition of law involved in the case is clearly and concisely stated, and, an exception was allowed to each and every part of the charge and the rights

of the railway company were fully protected, and in our opinion, the instructions were as favorable to the railway company as the facts in this case would justify. Hence, we are unable to perceive how the mere failure to number the instructions could constitute prejudicial error. And, in our opinion, there was no error in refusing the instructions requested by the railway company, because the general charge of the court sufficiently covered the entire law of the case.

It is next assigned and argued that the court erred in overruling the motion of the defendant to set aside the findings of the jury made in answer to question 12, 14, 39, 42 and 44, the same not being supported by sufficient evidence.

The jury, in answer to question 12, found that the station at Edmond was not called. Mrs. Calhoun testified positively that the station was not called, and her testimony was corroborated, in effect, by several other passengers, who testified that they did not hear the station called. On the other hand, the porter testified that he called the station. Upon this point the evidence is conflicting, and therefore, under the well-settled rules of practice, this court will not disturb such finding.

In response to question 14 the jury found that the train stopped at Edmond for only one minute. There is evidence to sustain this finding. The witness M. Fulton, testified, on page 46 of the record, on re-direct-examination that "it wasn't a minute." And the witness E. S. Vaught, on page 48 of the record, testified, in answer to a question put to him: "Have you any idea as to how long it remained? A. Well, I should say not more than a minute; perhaps a little longer

than that." It appears from all the testimony and all the circumstances that the train stopped but a very short time, the testimony as to the time ranging from one to three minutes: Hence, there was evidence in the record showing that the jury were justified in finding that the train did not stop longer than one minute. And the overwhelming weight of the testimony shows that the platform was dark, in fact very dark, and that the truck was at a point where the passengers had a right to believe the platform was free from obstructions, and where they had a right to embark and disembark from the train at that station.

The third and last assignment of error relates to the overruling of the defendant's demurrer to the evidence the refusal to give the peremptory instruction offered by the defendant, in overruling the motion for judgment on the findings of the jury, and the overruling of the motion for a new trial. This assignment of error goes directly to the merits of the cause, and, as heretofore stated, we are of the opinion that the court was fully justified in submitting the question of negligence to the jury under proper instructions, and that the court would have committed reversible error had the case been taken from the jury.

Upon careful consideration of the entire case, we are of the opinion that no error was committed by the trial court which would justify a reversal of the cause. The judgment of the court below is therefore affirmed.

Burwell, J., who presided in the court below, not sitting; all the other Justices concurring.