## NATIONAL REFINING CO. v. MILLER et al.

1. An order in words and figures as follows, viz.: "Miller, D. T. 1—6.— 1887. National Refining Co., Cleveland, O.: Please ship us at once on R. R. 10 bbls. P. W. oil, at 12 per gal.; 20 bbls. W. W. oil, at 13½ per gal.; 30 bbls. H. L. oil, at 14 per gal.; * * * F. O. B. Cleveland, Ohio. Time sixty days. This order is taken with the understanding that it is positive, and not subject to change or countermand, unless so specified hereon. Any agreement not stated on this order will not be recognized. The quantity of oil guaranteed,"—given to an agent, who has no authority to accept the same, for transmittal to his principal for acceptance, does not preclude parol evidence of a contemporaneous agreement with such agent that such order might be withdrawn prior to its acceptance, and that it was so withdrawn.

2. An instrument, absolute, unconditional, and irrevocable on its face, to be effective against the party executing it, must be accompanied with an actual delivery for the purpose for which it was made.

3. This court will not reverse the findings of the jury, or of a court acting as a jury, when such findings are based upon substantially conflicting

evidence. It is only in the absence of evidence to sustain a verdict that a judgment rendered thereon should be reversed.

4. The submission of special questions to a jury, to be answered by them in addition to a general verdict, is a matter within the discretion of the court, under our Code. Neither party can require it as a matter of right. That submission being discretionary, they can be withdrawn by the court at any time before the special findings are given, and such withdrawal furnishes no ground of exception.

(Syllabus by the Court.    Argued Oct. 29, 1890.    Opinion filed Feb. 5, 1891.)

Appeal from circuit court, Hand county. Hon. H. G. FULLER, Judge.

Action for the recovery of damages for breach of contract. Verdict and judgment for defendants. Plaintiff appeals. Affirmed.

*C. G. Hartley*, for appellant.

The making of the written contract rendered incompetent all evidence as to any oral contracts accompanying it. § 3545, Comp. Laws; Thompson v. McKee, 5 Dak. 172; Plow Co. v. Gilbert, 3 Dak. 239, 119 U. S. 491; Chemical Co, v. Howard, 23 N. E. 317; Miller v. Edgerton, 15 Pac. 894; Gordon v. Neiman, 23 N. E. 454; Dent v. Bird, 67 Cal. 652; Johnson v. Powers, Id. 179; Fuel Co. v. Bruns, 45 N. W. 699.

The delivery of the order to the agent of plaintiff was absolute and took immediate effect discharged of any oral agreements. §§ 3231, 3232, Comp. Laws; Holt v. Colton, 22 N. W. 495; Foster v. Hill, 22 N. W. 30.

By the terms of the contract the oil was deliverable upon the cars at Cleveland, Ohio. When so delivered the transaction amounted to a sale and delivery. Blumen v. Caddo, 1 Wood. 64. The Susan and Mary, 1 Wheat. 25; Powell v. McKechnie, 3 Dak. 319; Schmitz v. Dwyer, 53 Pa. 213; Waldron v. Romaine, 22 N. Y. 368; Bank v. Dayton, 102 U. S. 59; Benj. on Sales, §§ 516, 1040; Allen v. Agee, 16 Pac. 637; Bank v. McAndrews, 14 Pac. 763; Bank v. Davidson, 22 Pac. 517. The acts of the defendant did not amount to a rescission of the contract. To rescind a contract both parties must agree to the rescission, and the contract being in writing must be rescinded in writing. § 3589, Comp. Laws; Wheeler v. Railroad, 115 U.

S. 29; Utley v. Donaldson, 94 U. S. 29; Emerson v. Slater, 22 How. 28; Swain v. Seemans, 9 Wall, 254; Gilbert v. Plow Co., 119 U. S. 491.

In the absence of a showing that the books and the parties who kept them could not be produced upon the trial or that the evidence of the parties who kept the books could not be obtained it was error for the court to admit the evidence of Miller as to what those books showed. Taylor v. Riggs, 1 Pet. 591; DeLane v. Moore, 14 How. 253; McPhaul v. Lapsley, 20 Wall. 264; Clifton v. United States, 4 How. 242; Gilbert v. Merriam, 42 N. W. 11; Pidcock v. Voorhees, Id. 646; Parliman v. Young, 2 Dak. 175; Kearney v. New York, 92 N. Y. 617; Brayton v. Sherman, 23 N. E. 471; Terpening v. Holton, 12 Pac. 189.

If an instruction misstates the law, another instruction upon the same point correctly stated will not cure the error. McCleneghan v. Railroad, 41 N. W. 350; Wasson v. Palmer, 14 N. W. 171; McPherson v. Wisevell 26 N. W. 916; Ballard v. State, 28 N. W. 271; Fitzgerald v. Meyer, 41 N. W. 123. A court must charge the jury fully and correctly upon every point material to the decision whether requested to or not. Moline Co. v. Gilbert, 3 Dak 239; Pielke v. Railroad, 5 Dak. 444; Jones v. Mathieson, 2 Dak. 523; Willis v. Smith, 10 S. W. 683.

The refusal of the court to make the jury answer the six special interrogatories after they were submitted was erroneous. Union Pac. Co. v. Fray 12 Pac. 98; Summers v. Greathouse, 87 Ind. 205; Wichita Co. v. Fechheimer, 15 Pac. 362; 2 Thompson on Trials, § 2685; Bobbitt v. Bumpus, 41 N. W. 417.

*A. B. Melville,* for respondent.

A written contract may be modified or ended by parol. McClay v. Gluck, 42 N. W. 875; Erskine v. Johnson, 36 N. W. 510; Ruege v. Gates, 38 N. W. 181.

BENNETT, J. In the court below plaintiff sought to recover upon the following instrument: "Miller, D. T., 1—6—1887. The National Refining Co., Cleveland, O.: Please ship us at once on R. R. 10 bbl. P. W. oil, at 12 per gal.; 20 bbl. W. W. oil, at 13½ per gal.; 30 bbl. H. L. oil, at 14 per gal.;

* * * F. O. B. Cleveland, Ohio. Time sixty days. This order is taken with the understanding that it is positive, and not subject to change or countermand, unless so specified herein. Any agreement not stated on this order will not be recognized. The quantity of oil is guaranteed. ——— Remarks: Less freight, Signature: MILLER BROS. R. R. Town; Miller. P. O.: Do. Co.: ———. State: D. T. C. A. Malcolm, Salesman." Plaintiff proved that under this order it had delivered the oil to the Chicago & Pacific Railroad from their works in Newburgh, Ohio, and marked "Miller Bros., Miller, Dakota. care C. & N. W. R. R. Chicago, P. R. R. 4065. Articles. 60 barrels carbon oil,"—and that the same arrived in Miller, D. T., on the 12th of February, 1887. Defendants deny the delivery of the oil, and allege that the order was countermanded before it was accepted or filled by the plaintiff, and claim that the original order was returned to them by the agent of the plaintiff, and deny that they ever signed the order as set out in the complaint and produced in evidence. Defendants, claiming that this written instrument, even if valid as against them, did not constitute a complete, binding contract between the parties, offered to prove the conversation between plaintiff's agent and defendant at the time the order was given; that defendant W. H. Miller reserved the right to countermand the order, if his brother and partner did not concur in it, and that he did in fact on the next day countermand it, because his brother did not wish to purchase so large a quantity of oil at one time, and that the original order was then redelivered to him by the agent of the company, and that he did not accept the oil when it arrived at Miller and never had possession of it. This evidence was all objected to by plaintiff, but admitted by the court, and defendants obtained a verdict and judgment in their favor.

The first nine assignments of error are all based upon this simple proposition of law: Did this written order constitute such a written contract between the parties as would exclude parol evidence, or prevent the defendants from showing any further agreement entered into between the parties at the time

the order was given, and not embraced in it? We think not. This instrument was but a mere order. The National Refining Company was not bound by it in any way to deliver any oil. Until accepted by it, it was not binding upon either party. The true elementary rule on the subject is laid down by Chancellor Kent, in 2 Kent, Comm. 477, that "mutual consent is requisite to the creation of the contract, and it becomes binding when a proposition is made on one side and accepted on the other. * * * The negotiation may be conducted by letter, as is very common in mercantile transactions, and the contract is complete when the answer containing the acceptance of a distinct proposition is dispatched by mail or otherwise, provided it be done with due diligence after the receipt of the letter containing the proposal and before any intimation is received that the offer is withdrawn." Parsons gives this rule: "If A. makes an offer to B., and gives him a specified time for an answer, A. may retract before the offer is accepted, on the ground that, until both parties are agreed, it is no contract, and either of them has a right to recede, and one party cannot be bound without the other." 1 Pars. Cont. 406. Hilliard, in his treatise on Sales, states the rule as follows: "Where there is a written offer to sell, an acceptance consummates the agreement, if the offer is still standing; and it is presumed to be so until the time fixed, or, if none were appointed, till it is expressly revoked, or countervailed by a contrary presumption. * * * A bargain is closed where nothing more remains to be done to give either party the right to have it effected. Until both parties are agreed, either may withdraw an offer which he has made." Section 20, Thayer v. Insurance Co., 10 Pick. 332; Clark v. Russel, 3 Watts, 217. The instrument upon which the action was instituted, being but an order or request for plaintiff to furnish a certain quantity of oil, did not partake of the essential elements to become a contract. It was but a proposal, and as such is governed by Sections 3521 and 3522, Comp. Laws, which are as follows: "A proposal may be revoked at any time before its acceptance is communicated to the proposer, but not afterwards. A proposal is revoked by the

communication of notice of revocation by the proposer to the other party." The instrument, admitting that it was given by defendants as claimed by plaintiff, was then open for revocation and annullment by defendants at any time before acceptance by the plaintiff; and the revocation could be substantiated by extrinsic evidence, either parol or written. The assignments of error from 1 to 9, inclusive, are, therefore, not well taken, as the evidence introduced was proper, to show under what circumstances the proposal was made, and how revoked, if at all.

But conceding the law in relation to revocation of an ordinary order to be as above stated, the appellant's contention is that this was not a common order, but by its terms was an unconditional and irrevocable one; that the words that it "is taken with the understanding that it is positive, and not subject to change or countermand, unless so specified herein," and "any agreement not stated on this order will not be recognized," make it absolute, and not subject to withdrawal or revocation by the party executing it. Without deciding whether this contention is right or wrong in the abstract; an instrument, absolute, unconditional, and irrevocable on its face, to be effective against the party executing it, must be accompanied with an actual delivery for the purposes for which the instrument was made. The question of the unconditional delivery of the order was one of the issues in the case. If there was no delivery of it, no matter what the nature or conditions, it was not binding on the defendants. The testimony shows that the defendants wanted to buy some oil, and to purchase it cheaper than it could be purchased in Huron, and that one of the defendants, in the absence of the other, made the agent of the plaintiff an offer, at which he refused to sell, but would submit it to his principals, and, if they would let him, he would sell at that figure. The agent then was told that this defendant could not buy a car load of oil unless he had the consent of his brother, who was his partner. The agent thereupon said: "I will go to Blunt and Pierre, and will probably be back in the morning, and you sign this paper, and I will send it to my company, and,

if they will ratify it, it will be all right. You can sign it, and when I come back, if you have the consent of your brother, I will send it in to my company and have them ratify it." The next day the agent returned, and was met by this defendant. In the mean time the consent of his brother and partner could not be obtained for the purchase of the oil. This fact was made known to the agent, and the order taken up. It is thus made evident that the order was given to the agent for the sole purpose of delivering it to plaintiff for its acceptance. In the matter, as it stood at the time of the delivery of the order to the agent, he had no authority to receive and confirm it as an agent, because the price named for the purchase of the oil was far below what the agent was authorized to sell at, and his reception of it was only for the delivery of it to the company, and it having never been delivered to the company, but being taken up on the following day by the party executing it, became inoperative for want of delivery. The testimony upon this point is conflicting, but having been submitted to the jury, its finding must be considered as conclusive.

As to the question of the insufficiency of the evidence, and of the verdict being contrary to the evidence. The general rule that the appellate court will not reverse the findings of the jury, or of the court acting as a jury, when such findings are based upon substantially conflicting evidence, has been so often expressed by courts that it seems a work of supererogation to repeat it, and quite unnecessary to cite authorities to sustain it. It is only in the absence of evidence to sustain a verdict that a judgment rendered thereon should be reversed. In the case at bar the evidence is conflicting as to the time and circumstances of giving the order and the revocation of it. Malcomb, the agent and salesman of plaintiff, testifies that Miller, one of the defendants, met him on his return to the town of Miller from Blunt, and at that time he gave him the order for the goods. Miller testifies that it was given before the agent went to Blunt, and with the understanding that if his brother, who was his partner, did not concur in the giving of the order, he had the privilege of countermanding it when the

agent returned; and in accordance with this understanding he met the agent of the plaintiff at that time, and told him he wished to rescind and take up the order, and the agent then gave it to him.   The question of the proposal for buying the goods and its revocation, with the consent of the agent of the plaintiff, being left to the jury, and settled in favor of the defendants, and there being evidence to sustain such a verdict, it will not be reviewed, but be considered as conclusive.

The alleged errors of law occurring at the trial in the court refusing to give appellant's third, ninth, and thirteenth instructions have relation principally to the admissibility and competency of the evidence offered by the defendants and admitted in explanation of and pertaining to the revocation of the order. Under the construction we have given the instrument which is the foundation of the action, the court below made no error in refusing to instruct the jury as asked by plaintiff.   The court, upon the request of appellant, submitted to the jury several specific questions to be answered by it, which the jury declined to answer.   The court was then requested by the appellant to require the jury to answer them, which request was not granted, and the jury was discharged.  ·The failure of the court to comply with this request has been assigned as error.   The Code defines a special verdict as that by which a jury finds the facts only, leaving the judgment to the court.   Section 5060, Comp. Laws.   In certain cases the Code leaves it to the discretion of the jury, in the first instance, whether they will render a general or a special verdict.   This right of election exists only in actions for the recovery of money or specific real property.   In all other cases the court may direct the jury to find a special verdict in writing upon all or any of the issues, and in all cases may instruct them, if they render a general verdict, to find upon particular questions of fact, to be stated in writing, and may direct a written verdict thereon.   Section 5061, Comp. Laws.   The case at bar is one for the recovery of money, and one in which the jury upon its own motion could have exercised its discretion in rendering a general or special verdict, as its will or judgment might dictate.   The court,

however, submitted to them in connection with the case certain specific questions to be answered by them in rendering their verdict. It rendered a general verdict for defendants, but declined to answer the specific questions submitted. The appellant then asked the court to require the jury to answer them, which the court refused to do. This requirement, we think, is within the sound discretion of the court to which the application is made, and, like all discretionary power, if not exercised in an arbitrary, unjust, or prejudicial manner, will not be disturbed. In the case of Moss v. Priest, 19 Abb. Pr. 316, the court says: 'The submission of special questions to a jury, to be answered by them in addition to a general verdict, of which such answers form no part, seems to be entirely a matter of discretion with the court. Neither of the parties can require it as a matter of right. If they need a finding upon special questions, they must apply to the court in advance of the trial for an order to that effect. Being a matter of discretion, I apprehend the court can withdraw the direction at any time before the special finding is given, and the general verdict can be received without it. No vested right is acquired by either party to have findings given because the court has once so directed it. There is always room for withdrawing such directions and receiving a general verdict up to the time of signing the findings and filing them and entering them on the minutes, or for the court to exercise its discretion as to receiving them. Suppose jurors are ready to bring in a general verdict, if the court should not insist on answers to the special questions, could not the latter be withdrawn? To doubt that power would convert the discretion of the court into the right of the parties."

Our statute is identical with that of New York, and this question was raised before the superior court of New York city, in the case of Taylor v. Ketchum, 28 N. Y. Super. Ct. 514, where the court says: "It is claimed the court erred in withdrawing from the jury the first question in writing submitted to their consideration. The submission of the question in this form was purely discretionary. The language of the

Code is, 'the court may direct the jury to find a special verdict.' It was of no importance whether done or not, and its withdrawal from their consideration furnishes no ground of exception. * * * It is not like the case of issues framed by the court, sent down to the circuit for trial, upon which special findings are required upon specified issues. The court withdrew the first question in writing from the consideration of the jury, and instructed them they need not answer it. This, we think, the court had the right and power to do, and was purely a matter of discretion over which we have no control." It is true that the above quotation from this opinion is in the nature of an *obiter dictum*, as that question was not squarely raised in the case cited, yet we have adopted the reasoning as applicable to the case at bar, and believe it to be sound. To the same effect will be found the case of Swift v. Mulkey, 14 Or. 59, 12 Pac. Rep. 76. The contrary opinion has been held in the cases of Railroad Co. v. Fray, 35 Kan. 708, 12 Pac. Rep. 98; Ins. Co. v. Hathaway, 43 Kan. 403, 23 Pac. Rep. 428; Deusterberg v. State, 116 Ind. 144, 17 N. E. Rep. 624, and in other Indiana cases there cited. The Kansas cases, however, are based upon an imperative statute, which makes it a matter of right to have special questions propounded to the jury. So it would seem that proper questions once given to the jury cannot be withdrawn without answer, against the objection of the party at whose instance they were regularly put. We think the rule should be, where the power of the judge to put special questions to a jury is discretionary, that he may, in his discretion, withdraw them before they have been answered.

From the theory of the case, as we view it, we deem it unnecessary to review any of the questions that arise by reason of the shipment of the oil by plaintiff, because if its agent had authority to receive and take the order, he had the authority to accept a revocation of it; and, the jury having found that it was so revoked, anything that was done by the plaintiff afterwards was not binding upon the defendants, the knowledge of the agent being the knowledge of the principal. And, on the other hand, if he had no authority as an agent to take the or-

der, as made out, it was not binding upon the defendants until received and accepted by the principal, and could be withdrawn from his hands before transmittal to plaintiffs, which the jury found was done. Finding no error, judgment affirmed; all the judges concurring.