GEORGE MOSGROVE v. ZIMBLEMAN COAL COMPANY, Appellant.

**Minors:** KNOWLEDGE OF DANGER ON PART OF EMPLOYE. Under Code, section 2488, requiring persons in charge of a mine to supply sufficient ventilation, render harmless noxious gases, and authorizing the mine inspector to order men out of the mine where the air is insufficient, a mine employe has the right to assume that his employer has taken proper precautions to supply the mine with air that may be safely inhaled in to the lungs, in the absence of knowledge to the contrary.

NEGLIGENCE OF MINE OWNER. The neglect of a mine owner, in the absence of any excuse, to provide for ventilation of his mine, as required by Code, section 2488, is negligence entitling an employe to recover for injuries caused thereby, though the section provides no penalties for its violation.

*Per se.* In an action for such injuries, an instruction that the violation of the statute is negligence justifying a recovery, is proper, in the absence of all exculpatory evidence.

CONTRIBUTORY NEGLIGENCE. A mine employe having been injured by inhaling bad air while in the interior of a mine was not guilty of

| 110 | 169 |
| 120 | 154 |

| 110 | 169 |
| f125 | 541 |

| 110 | 169 |
| 128 | 266 |

| 110 | 169 |
| 129 | 451 |

| 110 | 169 |
| 131 | 730 |

| 110 | 169 |
| f133 | 93 |

4  contributory negligence because he knew that the air was bad at the entry, where it had been bad at the entry on previous occasions while it was safe in the interior.

**Evidence:** RES GESTAE: *Declarations of mine superintendent.* In an action by a mine employe for injuries caused by bad air, a request of the mine superintendent, after the injury, not to "go yet; we are changing the air, and can change it back again the way it was in three minutes," is admissible as part of the *res gestae*.

**Appeal:** DENIAL OF ABSTRACT. In view of Rule 22, corrections made by an appellee in his additional abstract will be taken as true, where appellant's denial is neither confessed nor sustained by a certification of the record.

*Appeal from Boone District Court.*—HON. D. R. HINDMAN, Judge.

SATURDAY, DECEMBER 16, 1899.

ACTION for damages occasioned by breathing bad air in a coal mine. From judgment on verdict against defendant, it appeals.—*Affirmed.*

*Phillips, Ryan & Ryan,* for appellant.

*Baker & Baker* and *Whitaker & Dale,* for appellee.

LADD, J.—The appellee's general denial of the appellant's abstract must be disregarded. *McGillivary v. Case,* 107 Iowa, 18. But the corrections made by the appellee in his additional abstract will be taken as true, as the denial of appellant is neither confessed nor sustained by a certification of the record. See section 22 of the Rules.

II. The plaintiff, an experienced miner, entered the coal mine of the defendant December 3, 1897. After passing to his room, he had removed a few shovels of mining dirt, and, when reaching to draw out some loose dirt with his hand, gas struck him. He thus described the occurrence: "It just seemed to draw me right up,—took me right in there. I was gobbled close up to the coal face. The coal

broke loose. I had a little trouble, and I fell over. Got up again, and went out into the road. My light was out, and I got about half up, and fell again. Then I crawled. The gas put my light out. Crawled out at the main entrance." After resting there a few minutes, he walked to the shaft, and left the mine. The evidence tended to show that the air in the mine was thick, and so filled with noxious gases that the lights either went out, or would not blaze up over half way.

As the plaintiff and two others were leaving the shaft, the superintendent of the mine said: "Don't go yet. We are changing the air, and can change it back again the way it was in three minutes. Wait until I go and hollow down to Bixley to turn the air,—to change the air back the way it was." The appellant contends that from this evidence negligence could not be inferred. The mine owner was bound, in the first instance, to furnish a reasonably safe place in which to work, and then to exercise ordinary care in so keeping it; and, in a coal mine, where noxious or poisonous gases are likely to be, supplying air that may be safely inhaled into the lungs is of the utmost importance. The duty of forcing in a sufficient amount of air, and so circulating it as to dilute and render harmless or expel the gases, devolved upon the proprietor, and, in the absence of knowledge to the contrary, the employe had the right to assume that this had been done. See *Corson v. Coal Co.,* 101 Iowa, 224; *Blazenic v. Coal Co.,* 102 Iowa, 706. If there were any doubt concerning this proposition, it is settled by section 2488 of the Code, which reads: "The owner or person in charge of any mine shall provide and maintain, whether the mine be operated by shaft, slope, or drift, an amount of ventilation of not less than one hundred cubic feet of air per minute for each person, nor less than five hundred cubic feet of air per minute for each mule or horse employed therein, which shall be so circulated throughout the mine as to dilute, render harmless and expel all noxious and poisonous gases in all working parts of the same;

to do this, artificial means by exhaust-steam, forcing-fans, furnaces or other contrivances of sufficient capacity and power, shall be kept in operation. If a furnace is used, it shall be so constructed by lining the up-cast for a sufficient distance with incombustible material, that fire cannot be communicated to any part of the works. When the mine inspector shall find the air insufficient or the men working under unsafe conditions, he shall at once give notice to the mine owner or his agent or person in charge, and, upon a failure to make the necessary changes within a reasonable time, to be fixed by him, he may order the men out, to remain out until the mine is put in proper condition." It will be observed that the particular appliances to be used are not specified, but that the result to be attained is clearly defined. Nor is the volume of ventilation limited. Before the proprietor has discharged his duty, regardless of the contrivances employed, or the amount of ventilation, the gases must be rendered harmless by being diluted or expelled. This is the plain import of the statute, and is emphasized by the clause authorizing the mine inspector to order the men out when the air is insufficient. The presence of gases in such mines is recognized, and the purpose of the law is to guard miners against injury therefrom. True, no penalties are provided for violation of this statute, save after notice from the inspector. Nevertheless it defines certain specific duties, a failure to discharge which by those operating a mine, in the absence of any excuse, constitutes negligence. Every person, while violating an express statute, is a wrongdoer, and is *ex necessitate* negligent in the eyes of the law; and an innocent person within its protection, injured thereby, is entitled to civil remedy by way of damages. *Dodge v. Railroad Co.,* 34 Iowa, 276; *Correll v. Railway Co.,* 38 Iowa, 124; *Small v. Railway Co.,* 50 Iowa, 338.

III. The appellant insists that the measure of its obligation was the exercise of reasonable care in the selection, construction, and use of appliances for the ventilation of the

mine. This is true, but whether it has been done must necessarily depend on the results accomplished. Mines differ, and what would be essential to furnish wholesome air to breathe in one might be dispensed with in another. If the appliances, as selected, constructed, and used, have proven adequate in furnishing sufficient air, and may reasonably be expected to do so in the future, then, if ordinary care is exercised in their operation, and in the discovery and remedy of defects, no more ought to be required. The particular cause preventing the proprietor from discharging the duty imposed by statute is peculiarly within his knowledge, and to exculpate himself from the charge of negligence in such a case he must show himself free from fault. If, then, the jury found, from the evidence, that the air in the apartment where plaintiff worked was so permeated with noxious or poisonous gases as that breathing it was dangerous to the health, then this, in the absence of any showing exculpating the defendant, warranted the conclusion that it was guilty of negligence.

IV. What has been said disposes of the criticisms of the third instruction. We set it out: "You are instructed that it was the duty of the defendant to provide and maintain a sufficient amount of atmosphere to be circulated throughout its mine so as to dilute, render harmless, and expel all noxious and poisonous gases in all working parts of its mine, and a failure on the part of the defendant to so ventilate would constitute negligence on the part of the defendant." Had the defendant introduced evidence tending to show it to have been without fault in supplying the mine with air, this instruction, standing alone, would not be a correct statement of the law applicable to the case. But no such evidence was offered, and, in its absence, the instruction correctly defined the duty of the defendant and the result of its violation.

V. Whether the plaintiff was guilty of negligence contributing to his injury was also for the jury. He knew the

air was bad at the entry, but explained that it had been so many other mornings, when he had found it much better at the face of the coal. The evidence tended to show that the circulation of air was better at the face than elsewhere. Under the circumstances it cannot be said, as a matter of law, that he was negligent in going to his work.

VI. The statement of the superintendent related to what had just been and was then being done. It concerned the supply of the air, and had a direct bearing on the condition of the mine then and when the accident happened. It may well be regarded as so connected with plaintiff's injury as to be a part of the same transaction, and admissible as *res gestae*.

VII. Other errors alleged in rulings on the admissibility of evidence are merely stated, not argued, and we are content in saying that upon examination we find the rulings correct. The verdict has such support in the evidence as to preclude any interference.—AFFIRMED.

GRANGER, J., not sitting.