### McALESTER-EDWARDS COAL CO. v. HOFFAR.

No. 8178—Opinion Filed June 12, 1917.

Rehearing Denied July 31, 1917.

(166 Pac. 740.)

**1. Master and Servant — Coal Mines — Operation.**

By section 3971, R. L. 1910, the operator of a coal mine is required, among other things, to keep all working places therein clear of standing gas. The standard of duty thus defined and imposed is, in all

circumstances, the criterion of his care for the safety of his employes in the operation thereof; his obligation to meet every statutory requirement is imperative; and neglect so to do, if resulting in injury to another, will, in the absence of contributory negligence, render him pecuniarily liable.

### 2. Negligence—Violation of Statutes— Negligence Per Se.

"As a general rule, the violation of a public duty enjoined by law for the protection of person or property constitutes negligence per se."

(Syllabus by Bleakmore, C.)

Error from District Court, Pittsburg County; R. W. Higgins, Judge.

Action by John N. Hoffar, as plaintiff, against McAlester-Edwards Coal Company, as defendant. Judgment for plaintiff, and defendant brings error. Affirmed.

Robt. N. McMillen, for plaintiff in error.

Linebaugh Bros. & Pinson, for defendant in error.

Opinion by BLEAKMORE, C. This action was commenced in the district court of Pittsburg county by John N. Hoffar, plaintiff, against the McAlester-Edwards Coal Company, defendant, to recover damages for personal injuries suffered by him while at work in a coal mine operated by defendant. The answer consisted of a general denial and pleas of contributory negligence and assumption of risk. There was trial to a jury, resulting in judgment for plaintiff, and defendant has appealed. The parties are referred to as they appeared below.

There is little conflict in the evidence. Plaintiff was employed as a shot firer in the mine of defendant, and in one of the working places of the mine, where he had gone in the discharge of his duties, encountered standing gas, which was ignited and caused to explode by a torch or lamp he was carrying, with the resultant injuries to his person, for which he recovered judgment.

There is much testimony descriptive of the mine, the mechanical devices used therein, the duties of divers employes, and the manner in which such duties were performed, to the major portion of which it seems unnecessary to advert at length. However, it appears that defendant employed a fire boss or gas man to inspect the mine for the purpose of ascertaining whether gas had accumulated therein, and,

if so, to report same, and by signs or markings warn the workers of its presence. It was the custom of the gas man to enter the mine at 3:30 a. m. and remain until 11:30 a. m. in the performance of such duties; and this he did on the day of the explosion, his inspection made at 5 o'clock in the morning showing the place where plaintiff was injured at 4 o'clock p. m. to be free of gas. There was also evidence relative to the use of appliances providing ventilation as required by the statute.

The assignments of error go principally to portions of the court's charge, and the refusal to submit to the jury certain instructions requested by defendant.

Instructions 3 and 4 given by the court, to which objection is urged, are as follows:

"You are instructed that the statute of the state of Oklahoma, in force on June 30, 1914, in defining the duties of coal mining companies in mines such as the evidence in this case shows this mine to have been, with relation to clearing its mine, and working places therein of standing gas, as set out in section 3971, is as follows: 'The operator of every coal or other mine, whether shaft, slope or drift, shall provide and hereafter maintain ample means of ventilation affording not less than one hundred and fifty cubic feet of air per minute for each and every person employed therein, and seven hundred and fifty feet of cubic feet of air per minute for every animal employed therein; but, in a mine where fire damp has been detected, the minimum shall be two hundred cubic feet of air per minute for each person employed therein, and as much more in either case as one or more of the mine inspectors may deem requisite. and the ventilation shall be conducted through the main cross entries and all other working places so as to dilute and render harmless and expel therefrom the noxious and poisonous gases, and all working places shall be kept clear of standing gas.'

"The court instructs you that if you find from a preponderance of the evidence that there was standing gas in explosive quantities in room No. 60, and that the plaintiff ignited the gas and was burned from the same, then your verdict should be for the plaintiff for such damages as you may believe he may have sustained, as hereinafter instructed, unless, however, you find from a preponderance of the evidence he is guilty of contributory negligence, as hereinafter defined, or unless you further find from the preponderance of the evidence that it was his duty as

shot firer to look for gas before firing a shot. If it be his duty to look for gas before firing a shot, then the defendant owes to him the duty only of using ordinary care to provide him a reasonably safe place for him to work, and if in this connection you believe from the evidence that the defendant furnished the plaintiff with a reasonably safe place to work, or used ordinary and reasonable care to furnish same, then your verdict should be for defendant."

The following are the requested instructions, failure to submit which it is insisted constitutes error:

"You are instructed that if you find the defendant company fulfilled the requirements of the statute as to the furnishing of means of ventilation and as to inspection of the mine for gas, but the means of ventilation at this point became inadequate and gas accumulated because of some change of conditions due to and during the progress of the operation of the mine, and such change and accumulation of gas had not been called to the attention of the superintendent mine foreman, or pit boss, or had not existed for a sufficient length of time for the defendant to have discovered the change or accumulation of gas in fulfilling the requirement of the statute for inspection of gas, then you are instructed that such accumulation of gas, by reason of such change of conditions, is not, of itself, proof of the negligence of the company, nor a violation of the statute against allowing standing gas in the mine.

"You are instructed that except in a case of emergency eight hours constitute a day's work underground in all mines of this state.

"You are instructed, in connection with instructions Nos. 3 and 4 heretofore given you, that the requirements of the statute as to inspection for standing gas are as follows: That every working place and all roadways must be carefully examined before each shift by a competent person, who shall be known as the fire boss or gas man, whose competency is determined by the state mining board; that such examination shall be begun within the shortest possible period of time necessary to complete such inspection before the regular time appointed to commence work, but in no case shall such examination be begun more than three hours prior to the appointed time of each shift commencing work, and in every place where explosive gas is discovered must place a danger signal across the entrance to such place. Second. The mine foreman is required to keep a careful watch over the ventilating apparatus and airways, to see that proper breakthroughs are made in rooms, to give prompt atten-

tion to all dangers reported to him by any person to cause all stoppings along the airways to be properly built. Third. The fire boss or gas man is also required to frequently examine the edge and accessible parts of new falls and old gobs and air courses.

"You are instructed that the law provides that the shot firer shall not enter the mine for the purpose of firing shots until all other employes are out of the mine."

We are of opinion that the charge given by the court was in no way prejudicial to the rights of defendant.

For the better protection of the health and lives of men engaged in the obviously dangerous work of mining coal the people of this state, by statute both remedial and penal, have seen proper to prescribe certain regulations and conditions under which a mine may be lawfully operated, one of which conditions is that "all working places shall be kept clear of standing gas." The standard of duty thus defined and imposed upon the owner of a mine in all circumstances is made the criterion of his care for the safety of his employes in the operation thereof; his obligation to meet all the statutory requirements is imperative; and neglect so to do, if resulting in injury to another, will, in the absence of contributory negligence, render him pecuniarily liable.

Considering section 6 of an act of Congress approved March 3, 1891 (26 Stat. at L. 1104, c. 564; Comp. St. 1916, § 3507), the provisions of which are almost identical with section 3971, Rev. Laws 1910, embodied in the charge of the court in the instant case, the federal Supreme Court in Deserant v. Cerillos Coal R. Co., 178 U. S. 409, 20 Sup. Ct. 967, 44 L. Ed. 1127, stated:

"The act of Congress makes three requirements: (1) Ventilation of not less than 55 feet of pure air per second, or 3,300 cubic feet per minute, for every 50 men at work, and in like proportions for a greater number; (2) proper appliances and machinery to force the air through the mine to the face of working places; (3) keeping all workings free from standing gas. If either of these three requirements was neglected, to the injury of plaintiff's intestates, the defendant was liable.

"We think the instructions numbered 1, 6, and 11, given at the request of the defendant, ignored the obligations of the act of Congress, and are so far inconsistent with the other instructions that

they tended to confusion and misapprehension, making the duty of the mine owner relative, not absolute, and its test what a reasonable person would do, instead of making the test and measure of duty the command of the statute. The act of Congress does not give to mine owners the privilege of reasoning on the sufficiency of appliances for ventilation, or leave to their judgment the amount of ventilation that is sufficient for the protection of miners. It prescribes the amount of ventilation to be not less than 55 cubic feet per second; it prescribes the machinery to be adequate to force that amount of air through the mine to the face of every working place. Nor does it allow standing gas. It prescribes, on the contrary, that the mine shall be kept clear of standing gas. This is an imperative duty and the consequence of neglecting it cannot be excused because some workman may disregard instructions. Congress has prescribed that duty, and it cannot be omitted and the lives of the miners committed to the chance that the care or duty of some one else will counteract the neglect and disregard of the legislative mandate."

In Little v. Norton Coal Co., 83 Kan. 232, 109 Pac. 708, it is said:

"The plaintiff was injured while at work in a mine by the falling of a loose rock from an entry. The jury awarded him damages. * * * If this were an action to recover for injuries caused by the omission of a common-law duty of the master, the defendant's theory would apply; but the action is based upon a duty which the statute imposes upon the defendant to keep careful watch to 'see that as the miners advance their excavations all loose coal, slate and rock overhead are carefully secured against falling in and upon the traveling ways.'" Gen. St. 1909, sec. 4987.

In Schwarzschild v. Weeks, 72 Kan. 190, 198, 83 Pac. 406, 409 (4 L. R. A. [N. S.] 515), it is said:

"'The employer is chargeable with knowledge of whatever it is his duty to find out and know' (quoting 5 Thom. Com. L. of Neg. § 5404). In Madison v. Clippinger, 74 Kan. 700, 703, 88 Pac. 260, 261, it was said: "That the violation of a duty expressly imposed by a statute upon an owner or operator of machinery dangerous to employes or to the public is negligence which prima facie imposes liability for damages resulting therefrom is well-settled law.' The defendant, therefore, cannot escape liability for its failure to perform the duty on the ground that it did not know that the rock was likely to fall; nor is it any answer to say that because the plaintiff. who was a miner of long experience, testified that he had not noticed that the particular rock which fell upon

him, was loose before it fell, he was guilty of contributory negligence, or that for the same reason the defendant could not have known the condition of the entry. No duty was imposed upon the plaintiff to keep careful watch to see that loose rock did not fall upon him. He had the right to rely upon the performance by the master of the statutory duty to inspect and keep the roofs of the entries propped to prevent stone from falling. The theory of the defendant that it was only bound by ordinary diligence to furnish a safe place for its employes to work would deprive the statute of all force. It is not to be assumed that the Legislature intended merely to declare that to be the duty which the common law already imposed upon him."

In Mosgrove v. Zimbleman Coal Co., 110 Iowa, 169, 81 N. W. 227, it is said:

"Before the proprietor has discharged his duty, regardless of the contrivances employed, or the amount of ventilation, the gases must be rendered harmless by being diluted or expelled. * * * The presence of gases in such mines is recognized, and the purpose of the law is to guard miners against injury therefrom. * * * It defines certain specific duties, a failure to discharge which by those operating a mine, in the absence of any excuse, constitutes negligence. Every person, while violating an express statute is a wrongdoer, is ex necessitate negligent in the eyes of the law; and an innocent person, within its protection, injured thereby, is entitled to civil remedy by way of damages. Dodge v. Railroad Co., 34 Iowa, 276; Correll v. Railway Co., 38 Iowa, 124 [18 Am. Rep. 22]; Small v. Railway Co., 50 Iowa, 338."

In Sterns Coal Co. v. Evans' Adm'r (Ky.) 111 S. W. 308, it is said:

"Ky. St. 1903, § 2731, provides in part, that: The owner, agent or lessee of every coal mine * * * shall provide and maintain for every such mine an amount of ventilation of not less than one hundred cubic feet of air per minute per person employed in such mine, which shall be circulated and distributed throughout the mine in such a manner as to dilute and render harmless and expel the poisonous and noxious gases from each and every working place in the mine,' This and every statute intended for the protection of laborers engaged in the hazardous business of coal mining should be rigidly enforced, and mine owners held to the strictest accountability (in the performance of these statutory duties. As said in Godfrey v. Beattyville Coal Co., 101 Ky. 339, 41 S. W. 10: 'The statute requires each owner, or lessee. of a coal mine, under a penalty, to provide and maintain by appliances and means therein described, a prescribed amount of ventilation throughout its mines. And all that was necessary for appellant to make out his case prima facie was to show the injury was caused by an explosion, and

that appellee had not complied with the statute, and thus would have been shifted the burden upon appellee to show the injury was caused, not by explosion of accumulated gases of a noxious or inflammable character, but instead by the imprudent and negligent manner in which the blasting was done by appellant.' To the same effect is Andricus v. Pineville Coal Co., 90 S. W. 233, 28 Ky. Law Rep. 704."

In Thompson's Commentaries on the Law of Negligence, § 10, the well-nigh universal doctrine as to statutory negligence is stated as follows:

"This seems to introduce in this place a consideration of the antithesis of the proposition contained in the preceding paragraph, the case where the Legislature of the state, or the council of a municipal corporation, having in view the promotion of the safety of the public, or of individual members of the public, commands or forbids the doing of a particular act. Here the general conception of the courts, and the only one that is reconcilable with reason, is that the failure to do the act commanded, or the doing of the act prohibited, is negligence as mere matter of law, otherwise called negligence per se, and this, irrespective of all questions of the exercise of prudence, diligence, care, or skill, so that if it is the proximate cause of hurt or damage to another, and if that other is without contributory fault, the case is decided in his favor, and all that remains to be done is to assess his damages."

Such is the established rule in this jurisdiction.

In C., R. I. & P. Ry. Co. v. Pitchford, 44 Okla. 197, 143 Pac. 1146, it is held:

"As a general rule, the violation of a public duty, enjoined by law for the protection of person or property, constitutes negligence per se."

"Where the circumstances of a case are such that the standard of duty is fixed and defined by law, and is the same under all circumstances, the omission of this duty is negligence." Interstate Compress Co. v. Arthur, 53 Okla. 312, 155 Pac. 861; Sulzberger & Sons Co. v. Strickland, 60 Okla. 158, 159 Pac. 833; Littlejohn v. Midland Valley R. Co., 47 Okla. 204, 148 Pac. 120.

The same rule governs in cases involving violations of the federal Safety Appliance Act, it being held that the duty of a carrier to comply with the requirements of the act is absolute. Great Northern Railway Co. v. Otos, 239 U. S. 349, 36 Sup. Ct. 124, 60 L. Ed. 322.

Without discussion thereof we think it sufficient to state that under the circumstances of the case the rights of the defendant were not prejudiced by refusal to give the requested instructions.

The question of plaintiff's contributory negligence was properly submitted to the jury. The evidence, on the whole, is ample to support the verdict. No prejudicial error appearing, the judgment should be affirmed.

By the Court: It is so ordered.