## LaFAYETTE et al. v. BASS.

No. 15618—Opinion Filed March 23, 1926.

Rehearing Denied Feb. 8, 1927.

(Syllabus.)

1. **Venue—Process—Corporations — Action Against Corporations and Individual in County of Plaintiff's Residence and Where Cause of Action Arose—Service of Process in Other Counties.**

Where an action is brought in the district court of a county against a domestic corporation, an individual and a foreign corporation, and the cause of action or a part-

thereof arose in such county, or such county was the residence of the plaintiff, service of summons can be had upon the domestic corporation by serving the same in the county of the domicile of such corporation under section 202, Compiled Oklahoma Statutes, 1921, and service of summons can be obtained on the individual by serving him with summons in the county of his domicile under section 234, Compiled Statutes, 1921. And under article 9, section 43, of the Constitution, and section 205, Compiled Oklahoma Statutes, 1921, suit may be brought against a foreign corporation in the county where the plaintiff resides or in the county where the cause of action arose.

## 2. Trial—Submission of Special Interrogatories—Failure to Agree or Answer—Effect.

Under article 7, section 21, Constitution of Oklahoma, and section 552, Compiled Oklahoma Statutes, 1921, the privilege of submitting questions of fact to be answered by the jury at the time they return their general verdict is discretionary with the court We adopt the rule in reference to special findings of fact submitted to a jury that (1) a failure to agree upon such findings is equivalent to a failure to answer; and (2) a failure to answer, on the part of the jury, in view of a general verdict being returned and the approval of the same by the court, is equivalent to the withdrawal of the submitted special interrogatory.

## 3. Explosives—Kerosene for Illumination—Statutory Liability of Dealers.

Section 7991, Compiled Oklahoma Statutes, 1921, prohibits the sale, for illuminating purposes, of kerosene which will flash at a temperature of less than 115 degrees Fahrenheit. It makes dealers warrantors of such oils, irrespective o. inspection of such oils as provided by law.

## 4. Same—Liability for Damages.

Section 8009, Compiled Oklahoma Statutes, 1921, makes the jobbers and manufacturers liable to retail dealers and all other persons for damages of every kind and nature caused by the inferior quality of oil sold by said jobbers or manufacturers to such retail dealers and other persons.

## 5. Same—Absolute Liability Where Oil Did not Conform to Statutory Standard.

In an action to recover for injuries caused by the explosion of illuminating oil, which had been sold by the defendants, and wherein plaintiff produced evidence to show such oils did not conform to the standard fixed by the statute, it is no defense either that the defendants were ignorant that it did not so conform or that an authorized inspector had certified that it did; and if the person injured was using such care as would have been proper had the oil conformed to

the standard fixed, the jury will be warranted in awarding adequate compensation in damages to the person so injured.

## 6. Negligence—Violation of Express Statute —Liability.

Every person, while violating an express statute, is a wrongdoer, is ex necessitate negligent in the eyes of the law, and an innocent person, within its protection, injured thereby, is entitled to civil remedy by way of damages.

## 7. Explosives—Liability of Dealers for Injuries to Third Parties.

Where the law has made a product a thing inherently dangerous, one who dispenses it to the public does so at his peril and is liable in tort to innocent third parties injured thereby, even though there is no privity of contract existing between the seller and the injured person.

## 8. Negligence—Imputed Negligence.

The doctrine of imputed negligence is not recognized in this jurisdiction.

Error from District Court, McIntosh County; O. H. Searcy, Judge.

Action by Berral Bass against Ben F. La-Fayette, Oklahoma Producing & Refining Corporation of America, and the Holcomb Oil Company for personal injuries. Judgment for plaintiff, from which defendants appeal. Affirmed.

Britton H. Tabor, Alvin Richards, Bower Broaddus, and C. A. Ambrister, for plaintiffs in error.

Neff & Neff, Harry G. Davis, and John T. Cooper, for defendant in error.

RILEY, J. This cause presents an appeal from the district court of McIntosh county, wherein Berral Bass, a minor, by his guardian, sought judgment in the sum of $10.000 against the three defendants, Ben F. La-Fayette, the Oklahoma Producing & Refining Corporation of America. and the Holcomb Oil Company, for personal injuries alleged to have been received on account of the concurring negligence of the defendants.

The epitomized facts alleged are: That plaintiff's father sent a five-gallon can to be filled with coal oil at defendant LaFayette's store. the oil was so purchased. brought home. a lamp filled with the same, the lamp exploded and injured the plaintiff, who was studying in the room by the lamp. Facts further show that the kerosene oil was purchased by LaFayette from the Holcomb Oil Company about December 1. 1921. and about 30 days before the injury, and that the Holcomb Oil Company shortly prior thereto had

purchased the oil from the Oklahoma Producing & Refining Corporation of America.

Allegations of negligence relied upon are that said kerosene oil was explosive in its nature and was unsafe for use; that the same was sold by the defendants for illuminating purposes and that the defendants knew, or by the exercise of due care could have known, that the same was unsafe for the purpose for which it was sold, and that the same was sold in violation of the laws of the state of Oklahoma, and was sold without being inspected as required by law and regulations of the Corporation Commission, and that a proper inspection would have disclosed the explosive nature of the oil.

The defendants LaFayette and Holcomb Oil Company filed a motion to quash service of summons, which was denied. The Oklahoma Producing & Refining Corporation entered a voluntary appearance.

The defendants filed separate answers in the form of general denials, specifically denying that the said kerosene was manufactured and sold in violation of law, and alleged a proper inspection; pleading, further, contributory negligence.

The defendant LaFayette, answering, pleaded that he purchased the kerosene from a regular oil jobbing house in the usual manner; that the oils were properly marked and branded and that he had no knowledge or information of defects, if any; and denied the manufacture and sale of said oils in violation of law.

Plaintiff filed a general denial. The cause was submitted to a jury. Each defendant objected to the introduction of evidence on the grounds that the court had no jurisdiction for the reason that all the defendants were nonresidents of McIntosh county. These objections were overruled. The defendant LaFayette demurred to plaintiff's evidence on the ground that plaintiff failed to establish any negligence on his part. The demurrer was overruled. Likewise defendants' request to the court for a directed verdict was denied.

The court, upon request of defendants, submitted to the jury a request for a special finding of fact which was as follows:

"* * * It is, therefore, proper that this question be submitted to you, and therefore you are asked whether or not the oil sold by the Oklahoma Producing & Refining Corporation of America to the Holcomb Oil Company, and in turn sold to Ben F. LaFayette, was of an inferior grade or quality of kerosene, and not suitable to be used for the usual and ordinary purposes to which kerosene is put."

The answer made by the jury to the special interrogatory was as follows:

"Answer: Can't agree. (Signed) G. C. Hale, Foreman."

The judgment of the court was in favor of plaintiff and against the defendants in the sum of $1,000, in accordance with the verdict of the jury.

All the defendants appeal and file separate briefs. The assignments of error are similar, and we shall consider them as nearly as possible in the chronological order.

It is first contended that the district court of McIntosh county was without jurisdiction of the defendants and, therefore, without jurisdiction to render any judgment whatever.

The plaintiff was a resident of McIntosh county. The cause of action arose there. The Oklahoma Producing & Refining Corporation of America was a foreign corporation. Section 205, Compiled Oklahoma Statutes, 1921, and article 9, section 43, of the Constitution, provide that a foreign corporation may be sued in any county where the cause of action arose, or where the plaintiff resides. A., T. & S. F. Ry. Co. v. Lambert, 32 Okla. 665, 123 Pac. 428; Shelby-Downard Asphalt Co. v. Enyart, 67 Okla. 237, 170 Pac. 708; Martin v. Federal Motor Co., 89 Okla. 273, 215 Pac. 737.

Section 202, Compiled Oklahoma Statutes, 1921, provides, amongst other things, that a suit may be brought against a domestic corporation in the county where the cause of action arose. Summons was served upon the Holcomb Oil Company, a domestic corporation, in the city of Muskogee, the county of its principal office.

The defendant LaFayette was served in Oklahoma county. Section 234, Compiled Oklahoma Statutes, 1921, provides, "where the action is rightfully brought in any county, the summons shall be issued to any other county against any one or more defendants at plaintiff's request." Okla. Natl. Bk. v. Ezzard. 58 Okla. 251, 159 Pac. 267.

Therefore, we conclude that under section 202, supra, the cause of action arising in McIntosh county, summons properly issued to the Holcomb Oil Company, the domestic corporation, in Muskogee county, and that, action rightfully being brought against said domestic corporation, summons rightfully issued to LaFayette in Oklahoma coun-

ty, and the trial court properly overruled the motion to quash service of summons.

We consider the second and third assignments of error together. They are as follows:

Second. The evidence of plaintiff was insufficient and failed to establish negligence on the part of any of the defendants and failed to establish violation of any law of the state of Oklahoma, or of any rules or regulations of the Corporation Commission, and demurrer to the evidence should have been sustained; and

Third. The positive, undisputed testimony of the defendants negatives any allegations or inference of negligence, or violation of any law, rule, or regulation, and the peremptory instruction requested by each of the defendants should have been given.

These two assignments of error may be reduced to the inquiry as to whether there was evidence sufficient to warrant the cause being submitted to the jury. In determining the answer to this inquiry, we look to the allegations of negligence contained in plaintiff's petition, heretofore recited, and find it said that the oil was in fact unsafe, and that the same was sold without being inspected as required by law. It was agreed by the parties that the oil which exploded was sold to the father of plaintiff by defendant LaFayette, and that LaFayette purchased the same from the Holcomb Oil Company, and that that company had purchased the same from the Oklahoma Producing & Refining Corporation of America, the manufacturer. The effect of this stipulation was that proof of defect in quality of the oil in the hands of one party defendant might by the jury be attributable to all parties defendant. The evidence of plaintiff failed to disclose that an inspection was not had, but his evidence tended to show that the oil at the time it was used was inflammable in character and that it was of such grade as would flash at a temperature of less than 115 degrees Fahrenheit.

The testimony of Ed Graham, chemist of the Corporation Commission, was substantially as follows:

"The state requirements under the Corporation Commission's orders are that kerosene shall be rejected if it flashes below 110 degrees Fahrenheit. * * * I ran a gravity test on a sample of liquid submitted by Mr. Cooper; also made a test of the liquid in an open room in atmospheric temperature, which showed the liquid contained in the bottle submitted would flash at atmos-

pheric temperature. Q. What was the atmospheric temperature that day at the time of the test? * * * A. Approximately 70 degrees Fahrenheit."

The evidence of defendants tended to show an inspection for the Holcomb Oil Company by N. F. Hancock, State Oil and Gas Inspector, with a result as follows: "Flash 150 degrees Fahrenheit. Sp. Grav. 42 degrees Fahrenheit. Grade good. Color _____."

Likewise an inspection by the chemist of the Oklahoma Producing & Refining Corporation, with a result of: "Flash test 154 degrees Fahrenheit. Sp. Grav. 41.9. Good grade. Color, 22."

The decisive question in this contention is whether under our statutes one is given a right of action against a seller of oil for damages sustained by an explosion, irrespective of an inspection, when the oil is shown in fact to be unsafe.

Section 7991, Compiled Oklahoma Statutes, 1921, provides:

"If any person in this state shall sell or offer to sell, or in any manner dispose of, to be consumed or used in this state for illuminating purposes, any of the oils or fluids specified in the first section of this article, except such oils or fluids as are expressly excepted by section 8004, that will flash at a temperature less than 115 degrees Fahrenheit, or shall sell or offer for sale, or in any way dispose of to be consumed or used in this state, for illuminating purposes, any of the oils and fluids aforesaid, which have been condemned by an authorized inspector of this state, and the barrels, casks or packages containing the same have been branded or marked by him as unsafe or rejected oils, the person so offending shall be guilty of a misdemeanor. and upon conviction be punished by a fine not exceeding $1,000."

Section 8009, Compiled Oklahoma Statutes, 1921, provides:

"All manufacturers and wholesale dealers shall be liable to retail dealers and all other persons for damages of every kind and nature, including fines, penalties and civil damages paid by such retail dealers and other persons because of the inferior quality of oil sold by said manufacturers or wholesale dealers to said retail dealers and other persons, and all contracts for the sale or purchase price of oils sold in violation of the provisions of this article shall be void."

Section 7991, supra, prohibits the sale, for illuminating purposes, of kerosene which will flash at a temperature of less than 115 degrees Fahrenheit. It makes dealers war-

rantors of such oils irrespective of inspection. Section 8009, supra, makes the jobbers and manufacturers liable to retail dealers and all other persons for damages caused by the inferior quality of such oil so sold.

In Hourigan v. Nowell, 110 Mass, 470, in an action to recover for injuries caused by the explosion of illuminating oil, which had been sold by the defendant, and did not conform to the standard fixed by the statute, the court held:

"* * * It is no defense either that the defendant was ignorant that it did not so conform, or, that an authorized inspector had certified that it did. * * * The law throws upon the vendor the responsibility and burden of keeping himself, at his peril, within the terms of the statute, in dealing with a kind of article the use of which has been found to be attended with great danger." Citing Wellington v. Downer Kerosene Co., 164 Mass. 64; Commonwealth v. Raymond, 97 Mass. 567; Commonwealth v. Farren, 9 Allen, 489; Commonwealth v. Nichols, 10 Allen, 199; Commonwealth v. Waite, 11 Allen, 268.

All of which cases, arising under criminal statutes, hold the scienter to be immaterial, in view of the general rule that where acts which are not mala in se are made mala prohibita from motives of public policy and not because of their moral turpitude or the criminal intent with which they are committed.

In Downing v. State of Georgia, 66 Ga. 160, it is held:

"The law in emphatic terms prohibits the sale of oil below the test by anyone—whether knowingly or ignorantly. If he sells, or offers to do so, he does so subject to its penalties if he violates it." See, also, State v. Boyland (Conn.) 65 Atl. 595; Donahue v. Kelley (Pa.) 37 Atl. 186.

One violating an express statute is a wrongdoer, and as such is, ex necessitate, negligent in the eyes of the law. Such act, if it injures an innocent person, is negligence per se, irrespective of the exercise of prudence, diligence, care, or skill, in the absence of contributory negligence. In such cases all that remains to be done is to assess the damages. Thompson on Negligence, vol. 1, paragraph 10; Peterson v. Standard Oil Co. (Ore.) 106 Pac. 337 and cases cited therein; Siemers v. Eisen, 54 Cal. 418; Osborne v. McMasters, 40 Minn. 103, 41 N. W. 543; 12 Am. St. Rep. 698.

The courts of Oklahoma are committed to the doctrine that violation of an express statute which causes special damages to another constitutes an actionable tort. Hobbs v. Smith, 27 Okla. 830, 115 Pac. 347.

In McAlester-Edwards Coal Co. v. Hoffar, 66 Okla. 36, 166 Pac. 740, this court quoted with approval from Musgrove v. Zimbleman Coal Co., 110 Iowa, 169, 81 N. W. 227, as follows:

"Every person, while violating an express statute, is a wrongdoer, is ex necessitate negligent in the eyes of the law, and an innocent person, within its protection, injured thereby, is entitled to civil remedy by way of damages."

In the case before us there was no contractual relation between the manufacturer or the jobber and the purchaser of the oils, yet the law has made the product so manufactured and dispensed a thing inherently dangerous (where the oils flash at less than 115 degrees Fahrenheit) and one who handles such articles does so at his peril and is liable in tort to innocent third parties whom they injure thereby, even though there is no privity of contract existing between them. Thomas v. Winchester, 6 N. Y. 397, 57 Am. Dec. 455.

For these reasons, we see no merit in this contention, and we conclude that in this jurisdiction one is given a right of action against a seller of oils for damages sustained by an explosion, irrespective of an inspection of the oils, when in fact the oil is shown to be below standard and of such quality as the law in effect declares the same to be a thing inherently dangerous.

It is next contended that the general verdict of the jury is contrary to and inconsistent with the special finding of the jury, and the judgment entered on the general verdict is necessarily erroneous.

As heretofore recited, upon the requested special interrogatory submitted by the court, the jury returned the words "Cannot agree." A general verdict was returned in favor of the plaintiff and against the defendants. The jury was discharged without any demand on the part of the defendants that the particular question of fact be answered.

Defendants rest their contention largely upon citations from the Supreme Court of the state of Kansas, citing: Kansas-Pacific Ry. Co. v. Reynolds, 8 Kan. 623; Cincinnati, St. L. & C. Ry. Co. v. Gaines (Ind.) 5 N. E. 746; Clark v. Mo. Pac. Ry. Co., 11 Pac. 134; Morrow v. County of Saline, 21 Kan. 484; Kansas-Pacific Ry. Co. v. Peavey, 8 Pac. 789; A., T. & S. F. Ry. Co. v. Swarts, 48 Pac. 953; Kaline v. U. P. Ry. Co., 76 Pac. 438; Croan v. Baden, 85 Pac.

532; Joliff v. K. C. W. Ry. Co., 129 Pac. 1178. It is recited by counsel for defendants that the Oklahoma statute applicable is identical with that of Kansas. Such is not the case. The Kansas statute, section 4733, Dassler's 1901, provides:

"In all cases a jury shall render a general verdict, and the court **shall** in any case, at the request of the parties thereto, or either of them, in addition to the general verdict, direct the jury to find upon particular questions of fact. * * *"

While in Oklahoma, article 7 of the Constitution, section 21, provides:

"In all jury trials, the jury shall return a general verdict, and no law in force, nor any law hereafter enacted, shall require the court to direct the jury to make findings on particular questions of fact; but the court may, in its discretion, direct such special findings."

And section 552, Compiled Oklahoma Statutes, 1921, follows the Kansas statute totidem verbis, except that it makes use of the word "may" where in Kansas the word "shall" is used. In Kansas the right to special findings is mandatory, in Oklahoma the privilege is discretionary.

Seemingly the holdings of the courts are uniformly to the effect that, where the right to special findings is mandatory, upon request, it is error over objections to discharge the jury without requiring answers to such special findings; where the privilege of special findings is discretionary, it is not error to discharge the jury in its failure to agree upon a special finding and to render judgment upon the general verdict. Especially would this be true in the instant case, where no objection was made to the discharge of the jury before the special interrogatory was answered.

In Kansas Pacific Ry. Co. v. Reynolds, 8 Kan. 623, Mr. Justice Brewer, in delivering the opinion of the Kansas court, wherein a jury returned answer to a special interrogatory in the form "unable to agree", but a general verdict was rendered, recites that under the Kansas Code of 1868, the matter of requiring findings upon particular questions of fact when a general verdict was returned was discretionary. He says:

"Under that law it might be that the court could properly receive and act upon a general verdict, even though no finding was returned upon any of the particular questions submitted. At least such seems to have been the ruling in New York in Moss v. Priest. 1 Rob. 632, a case in which the jury failed to return any answers in writing to particular questions submitted. Robert-

son, J., says: 'Being a matter of discretion, I apprehend the court can withdraw the discretion at any time before the special finding is given, and the general verdict can be received without it. No vested right is acquired by either party to have the findings given, because the court had once so directed it.' But, by the amendment made in 1870 to our Code (Laws 1870, p. 173, par. 7) this, which was before a discretion with the court, has become a right of either party. * * * It is secured only when the jury have returned with written findings to all the questions submitted. 'Unable to agree' is no finding."

In City of Wyandotte v. Gibson, 25 Kan. 236, the Kansas court held:

"A failure to compel an answer is in effect a withdrawal of the question, and is the same as though the court had refused to submit it in the first instance.". See also Burr v. Honeywell (Kan.) 51 Pac. 235.

In Robinson v. Palatine Ins. Co. (N. M.) 66 Pac. 535, wherein the jury returned the answer, "We cannot agree" to questions submitted, it was held:

"Even after submitting questions to a jury, the court may, if it sees fit, withdraw such questions from the consideration of the jury. Florence Machine Co. v. Daggett, 135 Mass. 582."

To the same effect is Poor v. Madison Power Co. (Mont.) 108 Pac. 645; N. Y. Co. Nat. Bank v. Am. Surety Co.; 74 N. Y. Supp. 692, 174 N. Y. 544, 67 N. E. 1086; Natl. Ref. Co. v. Miller (S. D.) 47 N. W. 962; Taylor v. Ketcham, 28 N. Y. Super. Ct. 514; Swift v. Mulkey, 14 Ore. 59, 12 Pac. 76; Rohr v. Isaacs, 8 Ore. 451.

We adopt the rule in reference to special findings that failure to agree is equivalent to a failure to answer. And that a failure to answer, under our statute, in view of the general verdict being returned, the failure of the defendants to insist upon the special interrogatories being answered, and the court's approval of the general verdict, is equivalent to the withdrawal of the special interrogatory, under the discretionary powers vested in the court under article 7, section 21, of the Constitution, and section 552, Compiled Oklahoma Statutes, 1921.

It is next contended by the defendants that the court erred in giving instruction No. 2, which was as follows:

"You are instructed that the statutes of this state require that all oil which is to be sold as kerosene oil shall be inspected by an authorized inspector of the state before the same is dispensed to consumers; that the inspection shall be made from the tank car, can or other container from which the

product is sold or delivered and shall be made by the inspector at the point where the product is located and shall be inspected, where practicable, in the county where sold, and that the law further requires that kerosene oil which would 'flash' at a temperature of less than 115 degrees Fahrenheit shall not be sold for use in illuminating residences or for illuminating purposes; and if the defendants sold as kerosene oil to be used for illuminating purposes oil which had not been inspected according to law or kerosene oil which would flash at a temperature of less than 115 degrees Fahrenheit, then such defendant or defendants would be liable for all damages to the plaintiff, if any, which were the proximate result of such unlawful sale."

Under our view of the case heretofore recited, the giving of this instruction was not error. The requested instruction No. 3, set out in defendant Oklahoma Producing & Relning Corporation's brief, and the requested instruction No. 2, set out in defendant Holcomb Oil Company's brief, to the same effect, both refused by the court, were correctly given by the court in instruction No. 5, which is as follows:

"You are instructed that the mere fact that an accident occurred and injury resulted therefrom to plaintiff is insufficient, standing alone, to warrant a recovery herein. It is incumbent upon the plaintiff to establish by a preponderance of the evidence that the defendants were guilty of some act or omission amounting to a violation of some requirement of law as defined in these instructions and that such act or omission caused or materially contributed to the injuries complained of, and unless you do so find, your verdict should be for the defendants."

We are, therefore, of the opinion that the court did not commit reversible error in refusing to give the instructions requested.

The only contention worthy of note remaining is that of defendant Oklahoma Producing & Refining Corporation of America wherein it is maintained that negligence of plaintiff's family is imputable to plaintiff. Under an assumption, by way of argument, that the defendants were guilty of negligence, it is insisted that, although plaintiff himself was not guilty of contributory negligence, the father and brothers were guilty of negligence, and through such negligence the accident happened, causing the injury, and such injury on the part of those in privity with plaintiff is imputable to plaintiff so as to bar a recovery

Several reasons present themselves as to why this contention is untenable in this jurisdiction and in this cause. First, no evidence is pointed out showing that the plaintiff's family were guilty of contributory negligence. Second, contributory negligence is a question of fact for the jury to pass upon, and the general verdict contradicts such a finding. Third, the doctrine of imputed negligence does not apply in Oklahoma, "as the doctrine of imputed negligence is not recognized in this jurisdiction. A., T. & S. F. Ry. Co. v. Calhoun, 18 Okla. 75, 89 Pac. 207. 11 Am. Cas. 681." Chickasha St. Ry. Co. v. Marshall. 43 Okla. 192. 141 Pac. 1172; Muskogee Elec. Tr. Co. v. Richards. 97 Okla. 61, 222 Pac. 265.

For the reasons herein set out. the judgment of the trial court is affirmed.

NICHOLSON. C. J.. BRANSON. V. C. J., and HARRISON. MASON. PHELPS. LESTER. HUNT, and CLARK, JJ.. concur.

Note—See under (1) 14a C. J. p. 795 §2885; p. 1400 §4121 (Anno) : 32 Cyc. p. 455. (2) 38 Cyc. pp. 1907, 1923 (Anno). (3) 25 C. J. p. 191. §14 (Anno). (4) 25 C. J. p. 191 §15. (5) 25 C. J. p. 191 §14 (Anno. (6) 29 Cyc. pp. 436. 437. (7) 25 C. J. p. 191 §15; 29 Cyc. p. 479. (8) 29 Cyc. p. 553.